## BROWN *against* BROWN.

A person deaf and dumb from his nativity, having in fact sufficient capacity, is not legally incapable of executing a deed.

Where a person deaf and dumb, and unable to read, directed a deed to be drawn and presented to him, which being done in conformity to his directions, he requested only to be informed what lands it contained, and an explanation being given commensurate with his request, he was content to execute it, without further explanation ; it was held, that such deed was valid, although the grantor was not informed whether it contained any covenants, nor whether it was a deed or a will.

Whether the difference between a deed and a will, or between a deed with covenants and one without, could be communicated to, and understood by, the grantor, for want of appropriate signs, is of no importance in relation to the validity of the deed ; provided the grantor had sufficient capacity to make, and knew that he was making, a conveyance of his estate.

THIS was an action of ejectment, for one undivided third part of sundry parcels of land in *Stamford,* tried at *Fairfield, December* term, 1819, before *Bristol,* J.

*Peter Brown,* the plaintiff's father, died seised of the demanded premises ; to one third part of which she, as his heir at law, was entitled, unless they were conveyed by him to the defendant, by a deed executed in his last sickness.

*Fairfield, June, 1820.*

Noble
*v.*
Comstock.

*June, 30.*

Brown
*v.*
Brown.

Whether that deed was valid or void, was the only question on the trial.

*Peter Brown* was deaf and dumb from his nativity, and unable to read. The deed was signed by him, in the presence of two witnesses, by whom it was attested; and it was acknowledged before a justice of the peace, and the acknowledgment was certified by him, at the time of execution. The plaintiff claimed, and introduced evidence to prove, that the deed was made clandestinely, without the knowledge of the apparent grantor, by his wife, and the defendant, his son, when the plaintiff was absent from home; that the defendant directed the justice, by whom it was drawn, in what manner to write it; that the whole contents of the deed were inserted, by direction of the defendant; that the defendant and the justice then went into the apartment where the grantor lay, in great bodily distress; that one of the witnesses to the deed shewed it to him, and informed him, by signs, that the instrument conveyed the lands therein specified to his son, but did not inform him, that it contained any covenants, nor whether it was a deed or a will. The plaintiff, therefore, claimed, that the grantor, by fraud and imposition, was made to sign a different instrument from that which he intended to sign. The plaintiff also claimed, and introduced evidence to prove, that the grantor had not a capacity sufficient to enable him to make a deed.

The defendant denied the fraud and imposition imputed by the plaintiff; and claimed, and introduced evidence to prove, that the grantor had a capacity sufficient to enable him to execute the deed; that before it was made, he had often communicated his intention as to the disposition of his estate, and had named as the grantees the persons to whom he finally conveyed it; that shortly before the deed was made, he directed, without the previous suggestion of any other person, that the justice should be called to his house, for that purpose, and when the justice came, the deed was drawn in conformity to the instructions of the grantor; that after it was drawn, the justice and witnesses went into the room where the grantor was, and one of the witnesses shewed him the deed, and informed him, by signs, that it conveyed to the defendant the lands therein contained; that the grantor, thereupon, executed and acknowledged the deed, without desiring further explanation; and that the defendant agreed to pay for it to the grantor, the

sum of of 365 dollars, annually, during the joint lives of himself and his wife, and the one half of that sum, annually, to the survivor, during his or her life, and also to pay a certain sum to the plaintiff and her sister, the other heirs. The defendant further claimed, and introduced evidence to prove, that the grantor understood, and could communicate the difference between a deed and a will; and also, that he understood and could communicate the difference between a deed with and one without covenants; that he knew that the deed in question contained the usual covenants; that at the execution of the deed, he was sixty-seven years old; had acquired, by his industry, an estate worth 12,000 dollars; had received ten or twelve, and had given three deeds of real estate, all containing covenants of warranty and seisin; and was acquainted generally with the nature and obligations of contracts.

*Fairfield,*
June,
1820.

Brown
*v.*
Brown.

The judge, after stating the case, and the claims of the parties, respectively, instructed the jury, " That a man deaf and dumb from his birth is not thereby rendered incapable to make a deed of real estate; but the deed of such a person may be good, if he has an understanding or capacity sufficient to enable him to make such a conveyance. If the grantor of the deed in question, being deaf and dumb, desired the deed to be read or explained, and this was not done, or done falsely, and he thereupon executed it, ignorant of the contents, it will be void; or if he did not desire it read or explained, and it was read or explained falsely, the result will be the same— the deed will be void. But if he desired or directed the deed to be drawn, and it was drawn and presented to him, in conformity to such direction, and he desired only to know the extent of lands contained in the deed, and was content to execute it, without further explanation, it will be good, provided an explanation of it was made commensurate with the request of the grantor. Whether the grantor had an understanding and capacity sufficient to enable him to make the deed in question, the judge submitted to the jury as a mere question of fact.

A verdict was returned for the defendant; and the plaintiff moved for a new trial, on the ground of a misdirection. The judge reserved the motion.

*Sherman* and *Bissell,* in support of the motion, contended,

*Fairfield,*
*June,*
*1820.*

Brown
*v.*
Brown.

1. That a person deaf and dumb from his nativity, and illiterate, is not capable of executing a deed. *Shep. Touch.* 403. cites *Swinb.* 53.

2. That if the grantor be illiterate, and either the grantee or a stranger, with or without his request, read the deed, or declare the contents thereof to him *falsely,* and otherwise than the truth is, the deed will be void. *Shep. Touch.* 56. An omission, so material as that of the covenants of seisin and warranty in a deed, is a *false* reading ; and this is matter of *law,* on which the judge ought to have instructed the jury. The grant and the covenants constitute but one instrument ; and a false reading of either renders the whole void. *Pigot's* case, 11 *Co. Rep.* 27.

3. That a new trial ought to be granted, for an omission in the charge on a point distinct from the grantor's capacity. The plaintiff claimed, that if the difference between a deed and a will could not be communicated to the grantor, and if he could not understand the difference between a deed with, and one without covenants, *by reason of the want of appropriate signs,* the deed was void. On this point the judge neither instructed the jury as to the law, nor submitted to them the fact. The question of fact submitted, related exclusively to the extent of the grantor's understanding; not to the sufficiency or adaptedness of the signs used as a medium of access to his understanding.

*Daggett* and *N. Smith,* contra, contended, 1. That the doctrine of the books is, that the deed or will of a person deaf and dumb is valid, if it appears, that he has sufficient understanding ; but a person deaf, dumb *and blind,* having <u>none</u> of the inlets of ideas, is unable to make deed or a will. *Swinb. part 2. page* 90. *sect.* 10. *Perk.* 11. *sect.* 25. *Pow. Dev.* 145. *Co. Litt.* 42. *b.* 2 *Black. Comm.* 497. 13 *Vin. Abr.* 12. *Com. Dig. tit.* Capacity. C. D. 4.

2. That to an illiterate man a deed must be read, if he request it, and read truly ; but if he execute it without reading, and not having desired it to be read, he is bound by it. *Shep. Touch.* 54. 56. In *Shep. Touch.* 403. and *Bac. Abr. tit.* Wills &c. B. (*vol.* 7. *p.* 301. *Gwil.* ed.) the law is laid down that a deaf and dumb man cannot make a will, and *Swinb.* is cited. Now, *Swinb.* 91. directly contradicts the position ;

and all the cases above cited declare, that a man deaf, dumb, *and blind*, cannot make a will.

*Fairfield*,
June,
1820.

Brown
*v.*
Brown.

3. That whether the grantor understood the difference between a deed and will, or between a deed with and one without covenants, was comprised in the general question of *capacity*, which was distinctly submitted. It is sufficient for a judge to submit to the jury the general question in the case, without adverting to the subordinate questions, which it involves.

HOSMER, Ch. J.   The plaintiff claims title as heir at law to *Peter Brown*, deceased; and the defendant resists on the ground that he is his grantee. The merits of the controversy depend entirely on the question, whether the grantor had capacity sufficient to execute the deed. It appears, that he was deaf and dumb from his nativity; and on that fact the plaintiff urges, that the deed was invalid. It was found by the jury, that the grantor had understanding sufficient to enable him to execute the deed; and the court adjudged, that his being deaf and dumb constituted no incapacity. If, superadded to the deprivation of the two senses before mentioned, the grantor had been *blind*, he would be considered in law as incapable of any understanding, being deficient in those inlets, which furnish the human mind with ideas. But this is not predicable of persons, who, from their nativity, are deaf and dumb only.

The question ever must be, is the grantor of sufficient capacity; and the absence of hearing and speech can be nothing more than *prima facie* evidence of a fact, the opposite of which is often found to be true.

The grantor directed a person to draw the deed in question; and having done it, the draftsman informed him, that it conveyed to the defendant the land specified, but omitted to declare that it contained covenants, or whether it was a deed or a will. Upon these facts, the validity of the deed is questioned, but without any foundation, for two reasons. First, no imposition is deducible from this statement. It is not like the reading of a deed to an illiterate person, on his request, and reading it falsely; and if it were, the covenants alone would be invalidated. *Shep. Touch.* 56. Secondly, the judge instructed the jury, "if the grantor directed the deed to be drawn, and it was drawn, and presented to him, in conformity to such direction, and he desired only to know the extent of lands contained in the deed, and was content to execute it,

without further explanation, the deed would be good, provided an explanation was made commensurate with the request of the grantor." Under this charge, it is a warrantable presumption, that the jury found the information given to the grantor, was co-extensive with his request, and thus the objection is clearly subverted.

The difference between a deed and a will, it was said, could not be communicated to, or be understood by, the grantor, *for deficiency of signs ;* and this is a supposed incapacity annulling the deed. Whether the difference between these instruments was understood, is of no imaginable importance. It is enough, that the grantor directed a conveyance of his lands ; and that he had understanding sufficient to transfer his estate. And it infers no incapacity, that he was unacquainted with the specific difference between two modes of conveyance.

The other Judges were of the same opinion, except BRAINARD, J., who was absent.

New trial not to be granted.