## ROBERT H. MARVIN vs. MERRITT E. TREAT.

The plaintiff recovered a horse and wagon that had been stolen from the defendant, and notified him by telegraph, and on his arriving delivered them to him. When the defendant took them away he paid two small bills growing out of the matter to other persons present, and just as he was leaving handed the plaintiff some money, saying, " Here is something towards what you have done, and if you will catch the thief I will give you $25." The plaintiff replied that he would do all he could. The plaintiff did not look at the money until the defendant was gone, when he found it to be $2. The defendant had in fact on the morning of that day posted handbills offering a reward of $50 to any one who should recover and return the horse and wagon, and $25 for the arrest of the thief, but the plaintiff did not know of this offer until a few hours after the defendant had left. In an action to recover the reward offered, it was held that the plaintiff had accepted the $2 in satisfaction for his services, and could not recover the reward.

ASSUMPSIT, to recover a reward offered by the defendant for the recovery of stolen property, with the common counts ; appealed by the defendant from a justice of the peace to the Superior Court, and tried to the jury on the general issue, with notice of an accord and satisfaction, before *Sanford, J.*

The evidence introduced by the plaintiff, (omitting some immaterial parts,) was as follows :

*Robert H. Marvin.* Am the plaintiff. Reside in Bridgeport, and did in 1867. I received there the following despatch, May 6, 1867, between nine and half-past nine in the morning: " To Chief of Police : Horse and carriage stolen. Horse six years old, bright bay, left hind foot white ; interferes ; top box buggy, side curtains, patent hubs. *Merritt Treat.*" Envelope was directed to chief of police. I had orders to open despatches that came while I was on duty. I went to the west side of the depot and asked the hackmen if they had heard of any such horse and carriage, and they said they had not. I went to the Atlantic stables and enquired. The hostler did not know. I went back to the depot. Soon after I saw Mr. Edwards. He said he believed there was such a horse and carriage over in East Bridgeport. I asked him to hitch up his team and drive me over there. He did so and took me to John White's place. I asked White if he had a horse and carriage in his stable which did not belong to him.

He said he had. I told him I would like to see it. He went with me to the stable and Edwards with us. He opened the door and we went in and saw the horse and carriage. I took out the despatch and read it to them. Horse and carriage answered the description. I told White it was stolen property and I wanted it. I asked him where he found it. He said he found it hitched to a tree near his place, and that he supposed it was some doctor's team and after letting it stand there some little time he thought he would put it into his barn. I asked him how much his bill would be for what he had done. He said he thought about $5. I told him I would see before it left my possession that he should have it. Told him we would hitch up and I would take it over to town. We did so. I got in and drove into the street. Had driven a few rods when White called to me. I stopped. He said " I am going over to town ; I'll ride with you." I said "All right, get in." He got in and we drove to Edwards's stable. White got out and went away. I asked the hostler to take care of the horse. I jumped out of the carriage. Don't know whether White was there or not. I did not see him. I said to the hostler, " It is stolen property, keep it till I call for it. Let no man take it without my order." I then telegraphed to Treat that I had his horse and carriage and to come down on the train. I saw Edwards half an hour after and told him I had put the horse in his stable, and not to let any one have it till I called for it. Edwards was proprietor of the stable. I went about my business. In the afternoon at 3 o'clock I met Treat, the defendant, and his brother-in-law, near the Atlantic Hotel. Treat said, "Have you a horse and carriage which belongs to me?" I told him I had, and if he would come to the stable I would show it to him. We went into the carriage house and showed him the carriage. He said it was his. Then into the stable ; and he said the horse was his. He told how the horse was stolen ; talked half an hour. Missed his lap robe. Edwards's driver had the lap robe. Treat said he would give me $25 if I would catch the thief and he was convicted. I told him to leave the robe and I would do what I could towards catching him.

I said any time you are ready for your horse and carriage I'll have it hitched up for you. He said that he was ready. I told the hostler to hitch it up. I asked Mr. Edwards if his bill was settled. He said yes. I then said to Treat, " Here is Mr. White, he has a claim for $5. He put him in his barn, and I told him he should have his money before the horse went away." White said, " Mr. Treat has already settled with me." I then said, " Your claim is satisfied is it ?" He said, " Yes." Treat turned away and handed me some money rolled up. I did not know how much was in the roll when he handed it to me. The amount was $2.00. He said, " Mr. Marvin, here is something towards what you have done, and if you will catch the thief I will give you $25." I told him I should do all I could. They drove away. I had never seen the published handbill at that time. I didn't see it that day. I heard of it that evening, not far from five o'clock. That was the first I had heard of the $50 reward. Treat had been gone two hours when I heard of it. This is the handbill : " $75 REWARD. Stolen on the evening of May 5th, from the subscriber, a horse, top buggy, robe and blanket. The horse is six years old, bright bay, black mane and tail, small star in the forehead, left hind foot white, a spot on the inside of left hind leg with hair off, weight about 1,000 pounds; top buggy, square body, patent hubs, side curtains. $50 will be paid for the recovery of the property, and $25 for the detection of the thief. Orange, Ct., May 6th, 1867. *Merritt E. Treat.*" I afterwards demanded the $50 reward of Treat. It was that same week I recovered the property. Payment was refused. The $25 for the detection and conviction of the thief was afterwards paid. The value of the horse and carriage was $500. I rendered the service in expectation of a reward.

*Cross-examined.* I was on duty as policeman on that day. I commenced not far from seven o'clock A. M. I stopped at quarter to six at night. Was on duty at the time I received the despatch and continued so during the day. My duty was to look out for disturbances, arrest thieves, &c. Continued on duty as policeman during the day and was paid

therefor by the city. I got the despatch between nine and half-past nine. White told me he had been over into town. Don't know as he told me for what. After I came to town, he told me he had advertised. Don't know whether he did before or not. Don't know as he said he had been to the livery stables to give notice. Think he did tell me so at some time. Don't know but he said he had to pay something to the newspapers, when he said he wanted $5. White did not object to giving up the horse and carriage. He said he thought it could remain there as well as to be taken to town. I told him I could take it to town, and he should receive his money. He was satisfied. He rode over with me. Didn't see Treat pay White. Treat offered $25 for the thief and I afterwards got it. I did not find the robe with the carriage. Never found it until Treat came there. I can't say as I found it then. Treat left it with me to enable me to catch the thief. The telegram was paid which I opened. I probably didn't pay the one I sent. Can't say who paid Edwards for carrying me to East Bridgeport. Didn't tell me he would pay any more. He said here is something for what you have done. Didn't intimate to him that I wanted any more. I didn't ask Treat if any reward had been offered. Don't think White or I talked about a reward.

*Horatio N. Sherman.* Lived in Derby in 1867. Was constable of the town. I saw a handbill like this on the 6th day of May, 1867, about nine o'clock in the morning. Treat gave me the handbill.

*Edwin Edwards.* Keep the Atlantic stables, Bridgeport. Saw Marvin, May 6th, 1867, at my place with a despatch from Derby stating that a horse and buggy had been stolen. Told him I thought I knew where they were; that White had been to my place that morning and said he had taken up a horse and buggy; that he wished to know if I knew of any one who had lost one, and was going to the papers to advertise. I told Marvin I thought this was the team he was looking for, and that we would go over and see. We went over and found the horse and buggy in White's barn. Marvin stated to White in substance that he had a despatch from

Derby that a horse and buggy had been stolen there, and that he wished to get it. We looked at it and concluded it was the one the despatch called for. White wished to know why it would not be as well to leave it in his barn as to take it away. Marvin said they had telegraphed him to secure the property. There was some talk; finally White told Marvin as he was a policeman he should let him take it. They took him out, hitched up, and Marvin got in and drove away. White hailed him and said he was going to town and would ride with him. He stopped; White got in and they went off together. Marvin had the reins. In the barn White said, I don't know but there is some reward offered for this. Marvin said he thought not; you can read the despatch for yourself; there is nothing said about it in that. Marvin asked White what his bill would be, and he said $5. He said he would see that he had it. I wasn't at my stable when they got there. I got there in a short time. Marvin put the horse in my charge and told me to let no one have it without orders from him. Treat, the defendant, came to my stable with another gentleman. Marvin gave orders to have the horse hitched up, and asked me if Treat had paid me. I said, "Yes." I charged $1.50.

The plaintiff here rested his case, and the defendant moved for a non-suit, which the court granted. The plaintiff then filed a motion to set aside the non-suit, which being denied he brought the record before this court by motion in error.

*Sanford*, for the plaintiff.

1. The non-suit was incorrectly ordered, because the plaintiff had made out a *primâ facie* case, under the common counts at least. The plaintiff secured the property and held it until he delivered it to the defendant. White did not know that the property was stolen, and was in no sense holding it for the owner. There was neither proof nor claim that White would not have given it up to the thief if he had demanded it plausibly. Again, the plaintiff notified the defendant by telegraph of his recovery of the property, thus giving him the first information. *Jenkins* v. *Kelren*, 12 Gray, 330.

The case of *Symmes* v. *Frazier*, 6 Mass., 344, is clearly parallel with the case at bar.  A recovery was there had on the *quantum meruit*, and the reward advertised was held to furnish the proper rule of damages.  To warrant a recovery the services need not have been rendered on the faith of the offer of reward.  It is sufficient that they were performed, were beneficial, and were accepted.     *Williams* v. *Carwardine*, 4 Barn. & Adol., 621 ; *S. C.*, 5 Car. & P., 566.

2.   The plaintiff was not bound by his duty as a constable or police officer to secure the property, notify the owner, or return the property.  No authority can be cited which holds. it to be so.  1 Burn's Justice, 394 ; 1 Bla. Com., 356.  On the contrary, it has been decided in *Neville* v. *Kelly*, 12 Com. Bench, *N. S.*, 740, that a police constable who has apprehended a thief before reward offered, may still recover the reward.   The services were *extra*, outside of his official duty, and therefore he may recover.     *Yates* v. *Hall*, 1 T. R., 73.

3.   Under the notice of accord and satisfaction the evidence should have been suffered to go to the jury.  The burden of proof under that plea rested on the defendant.   By putting in that plea the defendant admitted a cause of action, and the evidence offered by the plaintiff showed a payment of two dollars, which the defendant claimed was, but the plaintiff claimed was not, in full discharge.  If his evidence on cross-examination is conflicting, the jury should have been permitted to weigh the matter.  In reality no contradiction exists.  There is no fair inference that the payment was received in satisfaction.  1 Swift Dig., 299.  Courts should not non-suit a plaintiff when there is any evidence which by the most favorable construction would sustain a verdict in his favor. *Dodge* v. *McDonnell*, 14 Wis., 553.

*Seeley* and *Wooster*, for the defendant.

PARK, J.   We think it is clear that if the plaintiff ever had any cause of action against the defendant it was settled at the time of the transaction.  The plaintiff admits that when he delivered the horse and carriage to the defendant at

the stables of the Atlantic Hotel, the defendant gave him a roll of money, saying, "Here is something for what you have done," and that he took the money without any objection. He knew that the defendant intended the money as payment for the service he had rendered. This is evident, not only from the language used by the defendant when the money was presented to the plaintiff, but also from the fact that the defendant had just been paying Edwards his stable bill for keeping the horse, and White his bill for services rendered, and other expenses concerning the property. The plaintiff had bound himself as surety for the payment of these bills, and they had just been paid in his presence when the money was presented to him. He therefore knew that the defendant intended then and there to settle all bills concerning the property, and that the money presented to him was given as a full satisfaction for the service he had rendered. He received it without examination or objection, and clearly took it in payment of his claim, whatever the amount might be. The amount was not large ; not so large as it ought to have been under the circumstances ; but small as it was it was sufficient to cancel the plaintiff's claim, if received in satisfaction of it.

The whole conduct of the plaintiff clearly shows that it was so received, and we therefore think there was no error in the decision of the Superior Court in refusing to set aside the non-suit.

In this opinion the other judges concurred.