## HERMAN LANGE v. MARTIN PERLEY.

*Questions of fact—Suretyship—Exoneration from liability by assignment of property—Setting off assigned claim—Privileged testimony.*

It is error to submit undisputed facts to the jury as if they were in issue; or to submit questions which, however decided, can have no legal influence.

In an action by a surety for money paid to his principal's use, defendant may show, by way of accord and satisfaction or as an executed compromise, that in accordance with an agreement between himself and the plaintiff and other sureties he has assigned all his property in consideration of being exonerated from all liability.

Where a surety who has satisfied his principal's obligation sues the principal as for money paid to his use, it is nothing to the jury that he paid it to secure his own release from the obligation, and not with the sole intent of benefiting the principal.

The legal title to and right to collect an assigned claim vests in the assignee, in Michigan, and the assignor cannot, without reconveyance, set off the demand in a suit brought against him by the debtor on the assigned claim.

Where the surety for a county official sues his principal for money paid to the latter's use in satisfying his bond to the public, the testimony of the prosecuting attorney is not privileged if he obtained his information as the law officer of the county and as a member of a committee appointed to obtain a surrender of the principal's property in settlement of his liabilities to the public.

Error to Muskegon. Submitted Oct. 14. Decided Jan. 11.

ASSUMPSIT. Plaintiff brings error. Reversed.

*Andrew B. Allen* and *James H. Campbell* for plaintiff in error. Where plaintiff in an action for money paid to another's use, shows that by legal compulsion, or to free himself from liability or protect himself from damage, he has been compelled to pay what defendant should have paid, he need not prove either a previous request to pay or a subsequent promise to reimburse him: *Exall v. Partridge* 8 Term 308; *Nichols v. Bucknam* 117 Mass. 488:

*Hall v. Smith* 5 How. 96; *Ramsay v. Gardner* 11 Johns. 439; *Hunt v. Amidon* 4 Hill 345; *Bailey v. Bussing* 28 Conn. 455; *Burdick v. Glass Co.* 11 Vt. 19; *Jones v. Wilson* 3 Johns. 434; *Dawson v. Dawson* 12 Ia. 512; *Carney v. O'Neil* 27 Mich. 495; *Soulard v. Peck* 49 Mo. 477; *Garnsey v. Allen* 27 Me. 366: *Lindell v. Brant* 17 Mo. 150; *Keith v. Easton* 21 Pick. 261; *Pearce v. Wilkins* 2 N. Y. 469; *Graham v. Dunnigan* 6 Duer 629; *McClure v. Wilson* 43 Ill. 356; *Long v. Greene* 7 Mass. 268; *Norton v. Coons* 3 Den. 130; *Gleason v. Dyke* 22 Pick. 390: *Horbach v. Elder* 18 Penn. St. 33; *Dodge v. Wilkinson* 3 Met. 292; *Ticonic Bank v. Smiley* 27 Me. 225; *Brackett v. Evans* 1 Cush. 79; *Reynolds v. Doyle* 1 M. & G. 753; *Mauri v. Heffernan* 13 Johns. 58.

*Smith, Nims, Hoyt & Erwin* for defendant in error. An executed agreement to receive a chattel or deed of land in payment of a claim supports a plea of payment: *Howe v. MacKay* 5 Pick. 44; an assignment for the benefit of creditors at their instance if accepted in satisfaction of all claims, is a bar to action thereon: *Watkinson v. Inglesby* 5 Johns. 386; *Anderson v. Highland Turnpike Co.* 16 Johns. 86; *Bigelow v. Baldwin* 1 Gray 245; *LePage v. McCrea* 1 Wend. 164; *Evans v. Wells* 22 Wend. 324; *Rose v. Hall* 26 Conn. 392; a written release is not necessary to establish an accord and satisfaction, or a full settlement and discharge: *Pacific Mail Steamship Co. v. Irwin* 67 Barb. 277; *Dearborn v. Cross* 7 Cowen 48; an executed parol agreement between one's creditors to discharge their debtor if he will convey all his property to a trustee to be sold and equally divided between them is a good accord and satisfaction: *Eaton v. Lincoln* 13 Mass. 424; if a creditor agrees to cancel the debt when an article of his debtor's property or the note of a third person is delivered to him, he is bound by the execution of the agreement: *Lee v. Appenheimer* 32 Me. 253; *Colburn v. Gould* 1 N. H. 279.

GRAVES, C. J. In 1870 and whilst serving a regular term as treasurer for Muskegon county the defendant Perley was

again elected for the regular term ensuing, and in January, 1871, the plaintiff Lange joined with others as his sureties in his official bond for such second term.   In May, 1872, he was found a defaulter to a large amount, and the county instituted a suit on the bond and Perley offered no defense and was defaulted.   Subsequently and during the pendency of the suit he assigned all his property to Smith and Hackley, two of the sureties, for the benefit of his creditors.   He set up a claim that the missing funds had been engulfed in the business and concerns of the firm of Perley, Palmer & Co., and the county was induced to try and regain them by an action against that firm.   But the action was finally disposed of in this court adversely to the county.   *Perley v. County of Muskegon* 32 Mich. 132.   In January, 1876, the supervisors and several of the sureties, including Lange, concluded a settlement of the action on the bond.   On the basis of this settlement and pursuant to its provisions he became bound to pay $1363.63 and a particular part of the share which had been assigned to Sanford, another surety, but the amount of which is not given in the record.

The plaintiff's part of this arrangement was carried out by his giving his promissory notes secured by endorsements for the entire amount on one, two and three years' time. This was on the 15th of January, 1876.   The settlement was made with the assent and approbation of Perley, and Lange paid and took up the notes at maturity.   The assignment made by Perley produced not to exceed $5200. Lange finally instituted this suit to recover from Perley as money paid to his use the sum expended to take up the notes together with interest thereon, less, however, the proper share of Lange of the dividend from the assigned estate.

The above facts were not disputed and it is not denied that they were sufficient to entitle Lange to recover unless encountered by other facts of force to avoid them.   It is thus apparent that whatever material questions are in the case, they must be questions connected with the defence. The jury found in favor of Perley.

We are informed by the bill of exceptions that there was no evidence except what is recited in it, and accepting this statement as correct it follows that some of the instructions were without anything to warrant them. But another thing is noticeable. The charge assumed that certain pertinent matters which were not controverted at all, were yet to be handled by the jury as though they were in dispute. The submission exhibits other incongruities; still, a portion are directly chargeable to the plaintiff's own requests, and some others are not for him to complain of because they are in his favor. These transgressions were confusing and they serve to perplex investigation here. When there is no contest concerning a point of fact and it stands virtually conceded it is a clear impropriety to ask or lead the jury to view it otherwise. The actual entanglements are enough without imperilling the result with imaginary disputes or taxing the time or patience of the tribunal with fruitless contentions. All irrelevant considerations ought to be shut out. No questions which are unfit, however decided, to exert legal influence, should be submitted.

For the purpose of defeating the *prima facie* case against him, Perley proceeded to set up that it was agreed between himself on the one hand, and Lange and other sureties on the other, that he should surrender all his property and in consideration thereof should be exonerated from all liability and be no further subject to any claim growing out of the suretyship, and that in accordance with such agreement and in exact fulfilment thereof he made, with the assent and acquiescence of the plaintiff and his co-parties in the arrangement, the required assignment, being the same already referred to. This, if established, was a good defence by way of accord and satisfaction, or as an executed compromise, and there was evidence tending to sustain it. *Bull v. Bull* 43 Conn. 455; *Pulliam v. Taylor* 50 Miss. 251, 257; *Bigelow v. Baldwin* 1 Gray 245; *Tuttle v. Tuttle* 12 Met. 551; *Guild v. Butler* 127 Mass. 386; *Brooks v. White* 2 Met. 283; *Clark v. Gamwell* 125 Mass. 428; *Donohue v. Woodbury* 6 Cush. 148; *Ball v. Wyeth* 99 Mass. 338; *Peck*

*v. Davis* 19 Pick. 490; *Eaton v. Lincoln* 13 Mass. 424 ;. *Watkinson v. Inglesby* 5 Johns. 386; *Renard v. Tuller* 4 Bos. 107; *Ludington v. Bell* 77 N. Y. 138; *Blinn v. Chester* 5 Day 359 ; *Marvin v. Treat* 37 Conn. 96; *Savage v. Everman* 70 Penn. St. 315; *McCreary v. McCreary* 5 Gill. & J. 147; *Cooper v. Parker* 29 E. L. & E. 241; *Boyd v. Hind* 1 H. & N. 938, 947: 40 E. L. & E. 428; *Mellen v. Goldsmith* 47 Wis. 573.

But Perley was not willing to confine his defense to this ground. He insisted that at the time of the assignment of his property there was a balance of account in his favor against Lange of nearly $1000 and that the same had never been paid and should be set off in this action, and the jury were allowed to act upon this claim as one having some evidence in its favor and as being a suitable demand to be set off. The extent of the plaintiff's claim was at the same time left to be ascertained upon such views as the jury might feel inclined to take of it, and consequently it cannot be positively assumed that the jury may not have decided that this claim of the plaintiff was compensated by the alleged set-off. Hence the verdict may have turned on this defense.

Again, the jury were told that if they found that whatever Lange paid to the county he paid to buy his peace and to procure his individual release from the bond, and that if the same were not paid with the object of cancelling Perley's liability to the county there could be no recovery. For this instruction there was no evidence whatever. The testimony on this branch of the case had only one tendency, and that was to make out that the money paid to the county was paid to Perley's use. By Perley's procurement the plaintiff had become bound to the county for moneys Perley was individually and primarily accountable for, and the plaintiff could only relieve himself from liability by relieving the defendant, and whether in reasoning upon the situation into which he had been drawn he did or did not confine his mind to the idea of his own extrication was of no importance at all. It would be no less reasonable to deny to one who had fairly lent his money to another the right to recover

it unless he proved that the loan was made exclusively to benefit the person hiring and not himself. Or to require of a person who had endorsed for the accommodation of his neighbor and had been obliged to take up the paper, to make out as a condition preliminary to his right to be reimbursed that his only purpose in paying was to relieve his principal from his obligation. The ruling was not only without any evidence to which it could be referred, but was false in principle and fatally misleading.

The controversy raised by Perley by his claim to effect a set-off of the alleged balance of account, together with the questions belonging thereto, were irrelevant. On his own showing in the record he had no title to sue or set off the demand, even admitting it to be still alive. He had assigned it, and under our law, the legal title to it and the right to collect it in their own names had vested in the assignees, and there is no pretence that any reconveyance had taken place.

The objection that Mr. Smith, the prosecuting attorney, should not be permitted to testify because his statements were matters of privilege, was not tenable. Neither his position in reference to what took place nor the character of what occurred was such as to impose secrecy upon him. He was the law officer of the county and occupied with the duty of doing what he could in reason and fairness to avert the loss which was threatened by the defendant's very grave delinquency, and the exercise of this duty most naturally turned his attention towards making available to the sureties whatever property interests the defendant was possessed of. It would augment the fund practically applicable and would have its influence in securing an amicable adjustment satisfactory to the county. The latter was obviously interested in several ways. It was well known that if the defendant would surrender all his property it would be a step and an important one towards an immediate and inexpensive settlement as between the sureties and the county. It is no doubt true that Mr. Smith's professional knowledge and reputation and his position as law officer of the county gave a special character to his assistance and enhanced its value.

But he was expressly called upon, not in character of private counsel but to make one of a committee, the others being two of the sureties, to obtain a surrender of defendant's property, and the matters required from him on the stand were such as originated in the course of his service under that request. It was well understood that the transaction was of a public nature and that the facts were not private and confidential nor confined to the knowledge of any descriptions of persons connected as attorney and clients.

As having some bearing on the question see *Alderman v. People* 4 Mich. 414; *Hartford Fire Ins. Co. v. Reynolds* 36 Mich. 502; *McTavish v. Denning* Anthon's N. P. Cas. 113; *Hamilton v. Neel* 7 Watts 517; *Forbes v. Perrie's Adm'r* 1 Har. & John. 109; *Hoy v. Morris* 13 Gray 519; *Goddard v. Gardner* 28 Conn. 172; *Britton v. Lorenz* 45 N. Y. 51; *Whiting v. Barney* 30 N. Y. 330.

There are no other questions of any practical importance.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.