THE FOURTH NATIONAL BANK OF GRAND RAPIDS v. CHARLES E. OLNEY ET AL.

*Pleading—Evidence—Records of corporation—Estoppel—Discharge of sureties.*

1. In a suit against the stockholders of a corporation on a bond given by them to secure a credit at a bank for the corporation, they having participated in its action in giving a note intended to be secured by said bond, which recited the action of the company in securing such loans, after proof of the foregoing facts, the records of the company were held admissible in evidence without further proof of its organization, defendants being estopped from denying its authority or their own to take the action stated.

2. The points decided in this case are so intimately blended with the facts stated in the opinion that reference is had thereto for the same.

Error to Kent. (Montgomery, J.) Argued April 9, 1886. Decided October 14, 1886.

Debt on bond. Defendants, except Isaac M. Weston, bring error. Affirmed. The facts are stated in the opinion.

*Smiley & Earle* (*Stone & Hyde*, of counsel), for appellants.

*Blair, Kingsley & Kleinhans*, for plaintiff.

SHERWOOD, J. The Grand Rapids Iron Mining Company was organized in 1881. Its mines were in Marquette county, and its business office was at Grand Rapids.

On the tenth day of July, 1882, the company was indebted in the sum of about $6,000. The principal stockholders desired that the debt should be paid, and were willing to guarantee the paper of the company to the amount of $10,000, to pay the debt and continue its mining operations; and for this purpose an arrangement was made with the plaintiff that the Iron Mining Company should have credit at the plaintiff's bank for $10,000 on its commercial paper. This paper was to be secured by the joint bond of the defendants, officers and principal stockholders in the mining company, and the signers of the bond were, in turn, to be secured by a chattel mortgage to them on all the company's property.

The bond was executed and delivered to the bank in accordance with the arrangement, and the mortgage was executed upon part of the company's property to secure the bondsmen.

The bank, on several occasions between July 10 and December 15, discounted the company's paper; and on the

latter day the company gave a note to the bank for $9,-500, netting the sum of $9,367. At this time the bank held four notes of the company, which were due. Upon three of them there was due the sum of $5,625, and all of which were indorsed by the defendant Olney and other stockholders; and the proceeds of this note, to the amount of $8,734.77, were used by the company to take up the four notes mentioned. This large ·note was not paid at maturity. It was not indorsed, but its payment was guaranteed to the plaintiff by the bond mentioned, which was executed by the officers, or by those persons who constituted the officers, and stockholders of the mining company.

Subsequent to the maturity of the note, some of the signers of the bond, as appears, made payments, which were applied upon the note by the bank, until but $4,375 remained due upon the same.

This suit was brought upon the bond to obtain payment of this amount remaining due upon the note.

The case was tried in the Kent circuit, and a judgment obtained for the amount due the plaintiff.

All the defendants except Weston join in the appeal.

The declaration is in debt, upon the bond, and contains a single count.

The defendants Olney, Richmond, Eble, Taylor, and Luton appeared in the case, and pleaded the general issue. The other four defendants did not appear, and were defaulted.

The defendant Olney, who appeared and pleaded separately, gave notice that he would claim and show, under his plea, set-off and other special matters, as follows:

1. That he signed the bond on the promise of the plaintiff, through Weston, its cashier, that A. B. Watson, president of the bank, should be a maker thereof, and jointly liable with himself and the other makers, and on the faith of that promise he signed it before any of the

other makers thereof except Weston; and the bank, knowing of this agreement, accepted the bond without Watson's signature, and with the signature of Weston for him, but with a limited liability.

2. That he signed the bond under the agreement just recited, and the bank, with the knowledge of that agreement, took the bond without Watson's signature at all, in violation of such agreement.

3. That he signed the bond on the agreement with the plaintiff that Taylor & Luton should afterwards sign it, and be equally liable with him and other signers; and that, after his signature, the plaintiff agreed with Taylor & Luton that they might sign the bond with a limited liability thereon.

4. That the plaintiff, by settlement and discharge of certain of the defendants, had discharged him; and on the trial he was allowed to file an affidavit denying the execution of the bond, so as to give him the benefit of any defense possible under the proofs.

None of the defendants denied the execution of the bond under oath, except as hereinafter stated.

The record is full, containing all the testimony. At the close of the trial the circuit judge directed the verdict rendered by the jury.

It would appear from the record that defendant Olney makes the principal defense, and that the other defendants appearing are willing to accept the benefits which may accrue to them from Olney's contest, and do not expect much, if anything, beyond that.

The contest of Olney is really placed upon two grounds:

1. That he was never liable upon the bond at all.

2. If he ever was liable, he had paid or settled such liability, and been discharged by the plaintiff.

At the close of the testimony, in order to allow the defendant Olney the full benefit of the positions his counsel had taken upon the trial, and in his notices under his plea, he was allowed, on motion of his counsel, to file a denial of the execution of the bond by him under oath. We think, however, this does not materially aid his defense as the case is presented.

The other defendants were, of course, upon the plead-
ings, limited in their defense to payment or set-off,
neither of which appeared in the testimony beyond the
amount for which credit was given by the jury; and there-
fore it is only necessary to consider the defense made by
Olney.

We think the bond was properly admitted in evidence
under the declaration, which sufficiently stated its legal
effect in its averments.

We also think it clear and undisputed, by the testimony,
that it was not understood, at the time the bond was made,
that Mr. Watson was to sign the bond, but that he was
to share in the liability; and the bond shows this upon its
face, and that Weston was to be liable for the amount
Watson was willing to pay.

The figures "$\frac{1}{10}$," at the end of the signatures of sev-
eral of the signers of the bond, do not limit their liability
upon the bond to the bank, or change the character of
that liability, whatever may be their effect in a suit for
contribution between the makers. That question, however,
is not before us upon this record. That Mr. Weston as-
sumed in the bond to pay for Mr. Watson in good faith,
and that it was so understood, further appears from the
fact undisputed that Weston, when paying his share of
the bond, paid for Watson's contribution as well as his
own share in the payments that have been made. *Inkster
v. First National Bank of Marshall,* 30 Mich. 143; *Riley v.
Dickens,* 19 Ill. 29; *Cockroft v. Claflin,* 64 Barb. 464; *Scott
v. Whipple,* 5 Me. 336; *Cutter v. Whittemore,* 10 Mass. 443;
*State v Peck,* 53 Me. 284; *York County M. F. Ins. Co. v.
Brooks,* 51 Id. 506; *Brown v. Judge of Probate for Kent Co.,*
42 Mich. 501; *State v. Pepper,* 31 Ind. 76; *Dair v. United
States,* 16 Wall. 6.

Under all the circumstances, as they appear in this
record, we think it may well be held that defendants are

estopped from making the defense attempted by defendant Olney upon this point.

The records of the Iron Mining Company were properly admitted in evidence without other proof of the organization and character of the corporation. The defendants were all members of that company; had participated in the action of the company in giving the note, the payment of which the bond was intended to secure, and were all signers of the bond, which recited the action of the company in securing the loans of money at the bank upon its notes; and had become the company's guarantors for the payment of its notes then made and thereafter to be made. After these facts had all been made to appear by the bond upon which recovery was sought, we think the evidence as to the existence, character, and authority of the company was sufficiently shown to admit the record testimony of what the company actually did do in the premises, which was relevant to the issue in the case, and that the defendants were clearly estopped from denying the authority either of the company or themselves to do what they did.

Whether the company had the right or not to mortgage its property has no bearing in this case, but the admission of the testimony could do no harm to either side.

The makers of the bond are all principals, and, as between them and the plaintiff, they are all equally liable upon the face of it for the balance due upon the note to the plaintiff.

It is claimed, however, that they, or some of them, have been discharged by the plaintiff by paying one-tenth of the claim in settlement of their liability. And this brings us to defendant Olney's fourth point of defense in his notice under his plea; and this is all that requires further consideration in the case. The record shows that, after the large note became due, it was placed in the hands of the

plaintiff's attorneys for collection. Some time afterwards, at the suggestion of the defendant Olney, as is claimed by Mr. Weston, though denied by Olney, Weston, acting for the mining company, took the note from the bank's attorneys and placed it in the hands of Mr. Follett, who was the attorney for the mining company, for the purpose of having him go personally to each of the bondsmen, and see if he could not induce each to pay the proper contributive share to take up the note.

From several of the parties to the bond Follett received one-tenth of the amount.

In the case of Weston, he received two shares, and in one case he took a house and lot, taking the title to himself. In another, he took a note of the party for his share, due in four months, and which has never been paid. He gave a receipt in each case for what he received, but in no case did it purport to discharge the party from his entire liability upon the bond. To some of the receipts Follett signed the name of the bank, by him, and to others he signed his own name, but says he had no authority from the plaintiff to settle with or discharge any one from all liability upon the bond.

The receipt he gave Olney reads as follows :

"GRAND RAPIDS, MICHIGAN, April 28, 1883.
"Received of C. E. Olney, check, $965.33, on account G. R. I. M. Co. note held by Fourth National Bank, being one-tenth of amount due; check not to be used until others liable have settled, or Olney's consent given to use same.                    L. D. FOLLETT."

Mr. Follett states that he held this check until the tenth of May following, when Olney gave his consent to the use of the money. This is Mr. Olney's testimony upon this point, viz.:

"In a week or ten days I met him [Mr. Follett] on the street. He said, 'You might just as well let me put this in; there are several in the same condition, and they will

not pay until the rest have.' I said, 'All right, then; go ahead and use the check.' The receipt in evidence is the one Mr. Follett gave me."

It will be seen that when Mr. Olney gave his check to Follett he did not intend to pay it in on the note until the rest of the bondsmen were ready to pay their several shares, but, when he found this could not be accomplished, he consented to its being paid in without regard to payment by the others.

We see nothing in all this tending to show that when the money was paid to the plaintiff by Mr. Olney's direction it was either his understanding, or that of the bank, that it was to be in full of his liability upon the bond, but the tendency was rather to the contrary. By the other testimony in the case upon this point it is shown, without contradiction, that neither Follett nor Weston had any authority from the bank to make any such compromise or settlement with Olney as he claims in his notice, with regard to his liability upon the bond, or to discharge him therefrom; and the circuit judge did right in not submitting the question to the jury.

We find no error in the rulings of the court, in the admission of testimony, or in the record presented, and the judgment must be affirmed.

CAMPBELL, C. J., and MORSE, J., concurred. CHAMPLIN, J., did not sit.