JAKOBOSKI *v.* GRAND RAPIDS & INDIANA RAILROAD CO.

1. NEGLIGENCE—RAILROAD COMPANIES—EVIDENCE.

Where, in an action against a railroad company for personal injuries, founded upon its alleged negligence in leaving certain cars uncoupled upon a side track, the uncontradicted testimony of the defendant's witnesses is to the effect that the cars were left coupled to the main train, and it further appears that, from the manner in which the train was handled, the cars must have been so coupled when placed upon the track, the mere fact that the cars were found detached a few hours later, in consequence of which the injury was sustained, is insufficient to justify a submission of the case to the jury.

2. SAME—LICENSE TO MOVE CARS.

A railroad company which has been accustomed to place cars intended for a factory upon an adjoining side track, and to permit the employés of the factory to uncouple and move them as needed, is not bound to anticipate that such employés will uncouple cars that are not to be removed at once, so as to render it liable in damages to one injured by the unexpected shunting of such cars through the concussion of a train.

Error to Kent; Grove, J. Submitted May 3, 1895. Decided September 27, 1895.

Case by Boleslaus Jakoboski, by his next friend, against the Grand Rapids & Indiana Railroad Company

for personal injuries. From a judgment for the plaintiff, defendant brings error. Reversed.

*T. J. O'Brien* and *J. H. Campbell*, for appellant.

*McBride & Malcolm*, for appellee.

MONTGOMERY, J. This is an action to recover damages for an injury sustained by the plaintiff on the 15th day of May, 1893. The testimony in the case shows that the plaintiff was at the time three years and eight months old, and that in the afternoon of that day he was run over and had his leg injured by a car on the side track of defendant's road at Grand Rapids. This side track extended from Bridge street to Leonard street, a distance of about one mile. The streets between Bridge and Leonard are numbered numerically from First to Twelfth. A switch extended from Seventh street to a point north of Eleventh street. It is a disputed question as to whether Ninth street was open. If it is to be deemed a public street at the time, the Widdicomb Furniture Factory was situated at the intersection of this street with the defendant's railway track. Tenth street was not open. The furniture factory stood on the north side of Ninth street, and between the tracks and the mill was a platform upon which logs were rolled and unloaded from the cars. North of the platform was a private driveway, used in connection with the business of the mill, and kept open. There was room for two cars at the mill platform, and between the driveway and Eleventh street there was room for fourteen cars, and north of Eleventh street there was room for a number of cars. There was a slight down grade from the north towards Ninth street. The custom was for the railway employés, when placing cars for the Widdicomb Furniture Company, to place two cars opposite the mill platform, and leave the balance, if any, north of the driveway, so as to keep the driveway open. The mill em-

ployés would then unload the cars left at the platform, and move, by the use of a pinch bar, another car back from those situated on the track between Eleventh street and Ninth. On the occasion in question the mill men had unloaded the two cars left at the mill platform by the company, had pushed them down south of Ninth street, had moved forward to the mill two other cars from beyond the driveway, and had unloaded the south one of these, the north one being partially unloaded at the time of the accident. The switching crew of defendant, having occasion to move the cars which had been left north of the driveway and between that and Eleventh street, backed the train down against the cars standing upon the track, and the concussion of the train with the standing cars started backward three of the cars which had been in some manner detached, the coupling pin having been removed between them and the cars to the north of them.

The circuit judge submitted the case to the jury upon a single question of fact. He said:

"There is but one question of fact for you to determine, and that is whether the defendant was negligent in the manner alleged in the declaration. I told you what the claim of the plaintiff was in that regard, that the cars were left in an unsecured condition; and I told you that the claim of the defendant was that they were properly fastened, and I told you, if they were properly fastened by the defendant, then the defendant was guilty of no negligence. I should have told you, and I now add, that between these two theories the burden of proof rests upon the plaintiff to maintain his case."

Mr. Campbell then said:

"In regard to this question, your honor, of the way the cars were left, as I understand the record, there is not any evidence disputing the testimony of the trainmen that they left them coupled."

*The Court:* "Well, I suppose that is true, Mr. Campbell. You have adduced testimony to show that they were left in a secure condition, and that, when you came

to shunt in the other cars, it was found that they had been released, the brakes released, and the coupling pins taken out.   There is no evidence as to who took them out. There is no evidence that they were not left in that secure condition."

*Mr. Campbell:* "Whether we are not entitled to an instruction on that point, that that is a point established, that they were so left?"

*The Court:* "I will leave the matter to the jury, who are the judges of the credibility of the testimony.   Unless they see some very good reason, from all the facts and circumstances developed by the testimony in the case, to discredit the testimony of defendant's witnesses that the cars were left in that secure condition, they ought to be governed by the testimony."

In this court counsel for plaintiff have failed to point out any testimony tending to show that these cars were left uncoupled in the forenoon, except the bare fact that they moved backward when the train was moved against them from the north.   If there were room for any just inference sustaining the plaintiff's theory that the cars were left uncoupled in the forenoon, there would be a question for the jury.   But we think, in view of the undisputed testimony as to how this train was handled in the forenoon, taken in connection with the testimony of the trainmen, there is not the slightest room for any such inference, and it is impossible to conceive upon what a jury could base a verdict in favor of the plaintiff upon this ground.   The testimony shows that, in the forenoon of the day in question, the same crew that did the switching in the afternoon went to the south end of the track, and took empty cars out of the south end of that track, and then went to the north end, and shoved the cars down to the mill.   They then moved the train northward, left 11 or 12 cars between the driveway and Eleventh street, moved the balance of the train forward, leaving an opening at Eleventh street, and left the remainder of the cars north of Eleventh street.   Not only did the trainmen swear that these cars were coupled, but, from the manner

in which the operation was carried on, it is apparent that it was a physical impossibility to move the train forward so as to clear the driveway, and leave the cars between the driveway and Eleventh street, unless they were coupled. When they came back in the afternoon to do the switching, the cars having been upon the private grounds of the railroad company, and left in this secure condition, they had no reason to apprehend that they were not attached. The testimony of defendant's witnesses was entirely unimpeached, and we think the jury should not have been permitted to disregard and set aside the only testimony upon the point. See *Apscy* v. *Railroad Co.*, 83 Mich. 432; *Byles* v. *Golden Tp.*, 52 Mich. 612; *Lange* v. *Perley*, 47 Mich. 352; *Corbett* v. *Spencer*, 63 Mich. 731; *Druse* v. *Wheeler*, 26 Mich. 189; *Hunt* v. *Order of Chosen Friends*, 64 Mich. 671; *Fourth Nat'l Bank* v. *Olney*, 63 Mich. 58; *Gillett* v. *Knowles*, 97 Mich. 77.

It is contended that as the mill employés were expected to run cars down from across the driveway, south, they must be treated as licensees of the company, and that defendant was bound to anticipate that they would uncouple cars. It is perhaps sufficient to say that this theory was not submitted to the jury, and that the verdict was not based upon any such view. But, furthermore, this license did not authorize the mill men to uncouple any except such cars at the south end of the detached train as they had occasion at once to run down. It is apparent from the circumstances of the accident that there was no danger from cars which had been removed, but only from a collision with an uncoupled car which was in contact with the train, so that the concussion would start the car southward on the down grade. As soon as the coupling with the cars was made, at the first attempt, in the afternoon, it shows that, had all the cars been attached together as they were left in the forenoon, they could not have come in contact with anything beyond the driveway, as they would have been under the complete control of the engineer.

The judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.