CRON *v.* TOLEDO & MONROE RAILWAY.

132   497|
|147   221|

ELECTRIC RAILWAYS—INJURY TO EMPLOYÉ—WARNING OF DANGER.
An electric railway company is not liable for the death of an
employé, killed by a contact with the fuse block on a switch-
board, where the evidence shows he was warned of the danger.

Error to Monroe; Lockwood, J. Submitted January
15, 1903. (Docket No. 46.) Decided March 23, 1903.

Case by Emilie Cron, administratrix of the estate of
Adam Cron, deceased, against the Toledo & Monroe
Railway, for the alleged negligent killing of plaintiff's
intestate. From a judgment for defendant on verdict
directed by the court, plaintiff brings error. Affirmed.

*Willis Baldwin* and *John O. Zabel*, for appellant.

*Charles A. Golden*, for appellee.

MOORE, J. This suit was brought to recover for the
death of plaintiff's decedent. The defendant was con-
structing a line of electric railway between the cities of
Toledo and Monroe and a power house at Monroe. It let
a contract to the Toledo & Monroe Construction Company
to do this work, and the construction company contracted
with the J. G. White Company for the construction of the
power house and installing of the machinery therein. The
railway was substantially completed, and a part of the
machinery had been installed. The road was in operation,
using the machinery which had been installed. The J. G.
White Company was completing the work at the power
house. Mr. Cron was at work, boxing up holes in the
floor. He had worked at this 2½ days, and had nearly
finished, when he was killed by reason of his face coming
in contact with some part of the fuse block on the back of
the switchboard while his hand rested upon an iron beam,

thus "grounding" a strong current of electricity through his body. The negligence charged in the declaration was that the defendant failed to warn the deceased of the latent dangers which he might encounter in doing this work. The court directed a verdict for the defendant. The case is brought here by writ of error.

Many questions are raised by counsel which we do not deem it necessary to discuss, as the determination of one of them must dispose of the case. The record discloses without contradiction that, before the deceased came to his death, he was warned of the danger, and cautioned as to what he might not do. Mr. Keller, the engineer in charge, testified at great length as to the warnings he had given. Among other things he testified:

"He was just getting up the lumber. I went over everything again with him,—the dangerous parts that I considered dangerous for a man that did not know anything about wiring,—because I knew there were only two places in particular that were in any way dangerous at all to a man not familiar with the work. I pointed out these two places, and told him he should not handle these wires at all. If he wanted to remove the wires, he was to come to me and ask if he was to move them. The following day he came into the office, and asked me to go back of the switchboard. I did so. I noticed a wire apparently close to the return circuit from the rail. It was very close to the west one that he had to box. I said I would remove it so that he could go ahead. I took a piece of board and pried the wire away. He wanted to assist me; he asked to assist. I refused. There was another wire in the way. I removed it with my hands. It was insulated. He went ahead with the work. I cautioned him. I went back of the switchboard every few hours during the day,—perhaps every hour. * * *

" Q. Just state what you said to Mr. Cron about the danger back of the A. C. panel.

"A. He was working there on one end. I called his attention to these dangerous places, which I considered dangerous for him to work around, and which is not very dangerous for us familiar with the switchboard, because it is usual with the apparatus back of the board. I called him over from one end of the work and told him. I said, 'This is hot.'

" *Q.* You mean the wire?

" *A.* Yes, sir; I said: 'This is warm. There is power going through there. You must not get anywhere near this.' I could not make it any stronger,—my caution to him. I had already cautioned him.

" *Q.* Tell us, as near as you can, what you said about the caution.

" *A.* I placed my hand near the wire, and said : 'This is hot. It is very dangerous. Must be very careful here.' That is practically what I said. Then I stepped over to the other one. I also cautioned him at that place. I said it was equally as dangerous.

" *Q.* The whole substance of your caution was that there were live wires there; that it was dangerous there,— not to touch it?

" *A.* Yes, sir.

" *Q.* That was the substance of the caution you gave him?

" *A.* Yes, sir.

" *Q.* That is substantially the caution you gave him ?

" *A.* I cautioned him the day before. I told him that he should not touch the wires anywhere. If there were any wires to move, I would attend to them; if he thought it was too dangerous to work there, I would rather have him stop right there. At the place he was killed I cautioned him again.

" *Q.* Was the caution you gave him the day before substantially to the effect as you have stated, and this caution about the live wire at this place where he was killed is the gist of all the caution you gave him ?

" *A.* Yes, sir.

" *Q.* You may state whether or not you called Mr. Cron's attention to everything that was dangerous where he was to do his work.

" *A.* I called his attention to every dangerous point that I thought was dangerous to him. I called his attention to the fact that he should look out and be careful in doing his work. I went from one end of the switchboard to the other, and pointed out every dangerous place."

Mr. Lewis, chief engineer in charge of the machinery, also testified to having warned Mr. Cron of the danger, to showing him the fuse block, and to pointing out to him the fuse wire where his head was when he was found dead, and to explaining to him the danger. It is claimed these

statements are discredited by other testimony given by the witnesses and by the circumstances surrounding the case. To sustain this claim it is necessary to take isolated questions and answers separated from what preceded and followed them. When these questions and answers are read in connection with the rest of the testimony, they are not inconsistent with it, and do not discredit it. The case is very different from that of *Preuschoff* v.‧ *Brewing Co.*, *ante*, 107 (92 N. W. 945), as will be seen by a reference to that case. In this case the testimony of all the witnesses was to the same effect, and was not open to doubt. See *Druse* v. *Wheeler*, 26 Mich. 189; *Conely* v. *McDonald*, 40 Mich. 150, and the many cases there cited; *Lange* v. *Perley*, 47 Mich. 352 (11 N. W. 193); *Jakoboski* v. *Railroad Co.*, 106 Mich. 440 (64 N. W. 461); *Ferris* v. *Assurance Co.*, 118 Mich. 485 (76 N. W. 1041).

The judgment is affirmed.

The other Justices concurred.