ALEXIER *v.* MATZKE.

1. INSANE PERSONS—DEAF MUTES—CONTRACTS—CAPACITY.
   The old doctrine that a deaf mute was presumed to be an idiot
   no longer prevails, and such persons are now held capable of
   entering into contracts if shown to have sufficient mental
   capacity.

2. SAME—CONTRACTS—VALIDITY—EVIDENCE—SUFFICIENCY.
   Where, in an action by a deaf mute to recover for work and
   labor, the evidence is undisputed and satisfying that plaintiff
   understandingly entered into a contract, with his father's
   consent and approval, to serve defendant, his brother-in-law,
   for the remainder of their lives in consideration of support
   and care, and both parties have acted upon the contract for
   twelve years without question, a verdict should be directed
   for defendant.

Error to Alpena; Emerick, J. Submitted November
14, 1907. (Docket No. 21.) Decided March 5, 1908.

Assumpsit by August Alexier, Jr., against William
Matzke for work and labor. There was judgment for
plaintiff, and defendant brings error. Reversed, and no
new trial ordered.

*Charles R. Henry,* for appellant.

*Joseph Cavanagh,* for appellee.

MCALVAY, J. The plaintiff is a deaf mute. He
brought suit against defendant, who is his brother-in-law,
for work and labor. Plaintiff lost his speech and hearing
when about three years old as a result of sickness. He
can write his name, and read a little in German. He has
never been instructed by the usual methods used by deaf
mutes to communicate with others. He communicates
with some of his family by the use of motions and a

limited number of signs, and watching the movements of the lips.

These parties are all German and speak the German language. In August, 1884, plaintiff, then 19 years of age, under an agreement agreeable to all concerned and consented to by his father, went to live on defendant's farm where his parents lived, and to which farm deferfd-ant afterward moved. Plaintiff remained there until August 10, 1892, when the following agreement was made and signed by the parties to this suit and plaintiff's father:

"This agreement, made this 10th day of August, 1892, between William Matzke of Maple Ridge township, Al-pena county, Michigan, of the first part, and August Alexier, Sr., and his son August Alexier, Jr., of the same place, of the second part, witnesseth:

" Whereas, the said August Alexier, Jr., being twenty-seven years of age, and deaf and dumb, and unable to earn independently enough to make his living, has agreed, with the consent of his father, the above-named August Alexier, Sr., some seven years ago, to live and stay with the said William Matzke   *   *   *   during their natural lives, and serve the said William Matzke with manual labor, and will faithfully obey all the rea-sonable wishes and commands of the said William Mat-zke, and protect and preserve the goods and property of the said Matzke; and the said William Matzke agrees and promises for the above consideration being faithfully and honestly fulfilled by the said August Alexier, Jr., he will board, lodge, wash, clothe him, and in case of sickness furnish him with medical attendance, care and medicine; but only as long as the said Alexier, Jr., shall remain and stay with the said Matzke.

" If the said August Alexier, Jr., should ever elect or choose to leave and part (   ) with the said Matzke, then this agreement shall be null and void, and the said William Matzke shall be under no obligation to the said August Alexier, Jr., whatsoever, for any services the said August Alexier, Jr., has rendered during his stay with the said Matzke, and the said August Alexier, Jr., agrees and promises that he will not demand any pay or other compensation for his services for the past years, nor for the future, except the above-named, during his stay, or while staying with the said William Matzke, but

will be satisfied with any compensation the said William Matzke should elect to give him out of his free will to the above-named compensation.

"Given in Maple Ridge, the day and year first above named.

"WILLIAM MATZKE. (L. S.)
"Signed in presence of "AUGUST ALEXIER, Sr. (L. S.)
"FRED W. WENDT. "AUGUST ALEXIER, Jr. (L.S.)
"AUGUSTA SCHENK."

This contract was prepared by Rev. F. W. Wendt, the pastor of the church these people attended, and a friend of the family. It was written first in German and by signs explained to plaintiff, and then written out in English and signed by the parties in the presence of witnesses.

It is urged upon the trial on behalf of plaintiff that he did not understand and appreciate the terms of this instrument when he signed it. The case was tried and submitted to the jury, and a verdict for plaintiff for $515 was rendered and a judgment entered against defendant, who asks this court to set aside this judgment on account of errors assigned. At the conclusion of the testimony defendant asked the court to direct a verdict in his behalf, for the reason that by the undisputed evidence in the case it appeared that plaintiff signed the contract with defendant understandingly and therefore cannot recover in this action. This motion was denied by the court, and the only important question in the case is whether the court erred in so doing. Defendant admits that the court upon the trial was correct in holding that the plaintiff in the case appearing to be a deaf mute, the burden of proof was on the defendant to show that plaintiff executed the contract understandingly.

The old doctrine that a deaf mute was presumed to be an idiot (i. e., non compos mentis) no longer prevails. 8 Am. & Eng. Enc. Law (2d Ed.), p. 842, and notes. The courts now hold that a deaf mute is not incapable of entering into contracts if shown to have sufficient mental capacity. 22 Cyc. p. 1208, citing *Brown* v. *Brown*, 3 Conn. 299; *Collins* v. *Trotter*, 81 Mo. 275.

The record, taken as a whole, shows that plaintiff does not lack ordinary intelligence. The question is not whether he was mentally competent to enter into this agreement with defendant, but whether he understood it at the time. The evidence upon this proposition was all furnished by witnesses for defendant. They are the father, mother and sister of plaintiff, the family minister, the defendant and his wife, who is also plaintiff's sister. The testimony of these witnesses is unimpeached and uncontradicted. The acts of the parties to this suit strongly support the testimony in the case. The first arrangement was made with the consent of the father about eight years before the written agreement was executed. ' No dispute appears to have been raised under it. For 12 years after this final agreement the parties acted under it without question. There is nothing in the case that casts the slightest suspicion upon the testimony of any of these witnesses. It is plain that, considering the weight of this evidence, in an ordinary case the court would have held it conclusive and directed a verdict for defendant. Will a different rule be applied in this case because plaintiff is a deaf mute? We see no reason why it should be made an exception. The mental competency of plaintiff having been established without question, the case is in the same condition as any case, leaving the transaction in dispute to be established by evidence. If the evidence was undisputed and conclusive that plaintiff understood the contract at the time he signed it—and we think it was—a verdict should have been instructed for defendant. *Druse* v. *Wheeler*, 26 Mich. 189; *Lange* v. *Perley*, 47 Mich. 352; *Byles* v. *Township of Golden*, 52 Mich. 612; *Fourth Nat. Bank of Grand Rapids* v. *Olney*, 63 Mich. 58; *Corbett* v. *Spencer*, 63 Mich. 731; *Hunt* v. *Order of Chosen Friends*, 64 Mich. 671; *Gillett* v. *Knowles*, 97 Mich. 77; *Jakoboski* v. *Railroad Co.*, 106 Mich. 440.

The three cases relied upon by plaintiff, viz., *Moliter* v. *Robinson*, 40 Mich. 200, *Woodin* v. *Durfee*, 46

Mich. 424, and *Wilson* v. *Royal Neighbors of America,* 139 Mich. 423, are distinguished from the case at bar in that the evidence relied upon was not undisputed, as an examination of those cases clearly discloses.

For the reasons herein stated, the judgment is reversed and no new trial will be ordered.

GRANT, C. J., and BLAIR, MOORE, and CARPENTER, JJ., concurred.