JOHN K. McCAHILL, ADMINISTRATOR, ETC., v. THE DETROIT CITY RAILWAY COMPANY.

*Street-railways—Negligence—Injury to child.*

1. Where a street-car driver permits a seven-year-old boy, who was upon the front platform with him when the car started, to remain there and ride for some distance, he has no right to order the boy to get off without giving him an opportunity to obey the order with safety.

2. It is a question for the jury in such a case whether the driver was negligent if he ordered the boy to get off while the car was in motion, or whether he should have first stopped the car, and then given the order.

Error to Wayne. (Reilly, J.) Argued January 11, 1893. Decided June 23, 1893.

Negligence case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*William Look* and *H. F. Chipman,* for appellant.

*Sidney T. Miller (John C. Donnelly,* of counsel), for defendant.

McGRATH, J. Plaintiff's intestate, a boy 6 years, 11 months, and 10 days old, was run over and killed by one of defendant's cars. Defendant operated a street railway on Trumbull avenue, Howard, Seventh, and Congress streets, in the city of Detroit. A one-horse car was being driven east on Howard street, between Eighth and Seventh streets. The Seventh street track is used in common by the Baker street line. The driver stopped his car before reaching Seventh, and ran forward to see if there was a Baker street car coming north, and, finding none, returned to his car, and found the boy on the front platform of the

car. The driver started his car, turned south on Seventh, and the boy was run over just south of Lafayette avenue, a little over one block from Howard street.

The driver, upon his direct examination, stated that when he returned to his car, on Howard street, he told the boy to get off; that the boy said he would get off when he got around the curve, meaning the curve at the corner of Howard and Seventh; that the boy did not get off when the car had passed the curve; that when the car reached the south crossing he slackened the car very near a stop, and told the boy to get off, but the boy made no move, and,—

"When I got over the crossing a little ways, I stopped the car to a dead, and told him he must get off. At that he stepped off. I started the car off, letting the brake off, and it didn't go more than four feet before I felt a jar, or the car going over something. I stopped immediately, and the boy was under it. I don't think I was over a car-length, or a car and a half, over the Lafayette crossing, when I stopped the car."

On cross-examination the attention of the witness was called to his testimony taken at the coroner's inquest, in which he stated that—

"He didn't get off that time, and waited until I got over the crossing, and I slackened down again, going very slow; and I told him he would have to get off, or get me into trouble. So I stopped the car, but he got off before I could stop it. The car was then going very slow, nearly at a stop, when he got off, and got on his feet backwards, and let go."

Other testimony tended to show that Fort street is considerably lower than Lafayette; that the accident occurred near the alley south of Lafayette, or about 60 feet south of Lafayette. A passenger upon the car testified that the car did not stop after leaving Howard street, until after the accident; that he saw the boy get off the car; that just after the boy stepped off the car he noticed the car going

over something; that he heard "them speaking" just as the boy got off, but could not tell what was said. Another witness stated that she saw the accident; that she heard the driver tell the boy to get off; that the car was going at the time he told the boy to get off, and when the boy got off.

The boy did not fall off because allowed to remain on the platform. There was no evidence tending to show that he was merely permitted to get off the car, or that the driver was guilty of only a careless disregard of the boy's presence on the car. Even if it were true that the driver was applying the brake to stop the car so as to allow the boy to get off, and the boy, without being ordered so to do, and without waiting for the car to stop, jumped off, the driver having no reason to expect that he would do so, it does not follow that the driver was guilty of negligence. The same result might have followed if he had been riding in the car box.

This boy was less than seven years of age. He had not jumped upon the car while it was in motion. He was on the front platform of the car, beside the driver, to the driver's knowledge, when the car started. He had been permitted to ride for some distance. Having permitted him to remain upon the car, the driver had no right to expect him to get off, or to compel him to get off, or to order him to get off, without giving him an opportunity so to do with safety. Even the refusal of an adult to pay his fare would not authorize the conductor to eject him from a moving car. Here, the permission extended to a mere child must be held equivalent to an invitation, so far as the degree of care which defendant was bound to exercise was concerned. As is said in *Powers v. Harlow,* 53 Mich. 507, 515:

"Children, wherever they go, must be expected to act upon childish instincts and impulses; and others, who are

chargeable with a duty of care and caution towards them, must calculate upon this, and take precautions accordingly."

Even upon the driver's own testimony, he had ordered the boy from the car three times: First, before the car started, when the boy told him he would "jump off" after the car passed the curve; second, at the south side of Lafayette, while the car was moving; and, third, at the time that the boy did jump off. There was testimony tending to show that when he was ordered off the third time the car was at a standstill; but a passenger upon the car, and a witness who was upon the sidewalk, and who saw the boy, and heard the driver order him off, say that the car was moving. The question of merely permitting the boy to get off was not the negligence which plaintiff's proofs tended to disclose. The second count of the declaration alleged that the boy had been put off, or ordered off, while the car was in motion, and there was proof tending to establish that allegation. The jury should have been directed to that question.

The charge of the court that, "if the boy knew what his father meant when he warned him not to go on the car, then he was not entitled to the same degree of care as an innocent child, who gets onto a car without any warning," was clearly erroneous. The father of the boy testified that he had "warned the boy not to be jumping on the cars; to keep off the cars, and away from them; and that he punished him when he found that he did go there." There was no testimony tending to show that he explained the danger and risk to the boy. He simply threatened to punish him if he did it, and he probably meant what he said.

It was a question for the jury whether the driver was negligent if he ordered the boy to get off while the car was in motion, or whether he should have first stopped the car, and then ordered the boy to get off.

While plaintiff was upon the stand the court said:

"I don't see what damages the parents would suffer for the death of a child six years of age. You are entitled to their services until they are 21, but it costs a great deal more to raise them than they can suffer."

The questions of plaintiff's damage, and the value of decedent's services less the expenses of care and support, were questions for the jury, and not for the court.

It was suggested upon the hearing that judgment had not been entered when the writ of error was sued out. The writ issued February 24, 1892, returnable March 29, 1892. The bill of exceptions was settled in March. Judgment was entered April 8, 1892. The time for the return to the writ of error was extended to May 5, 1892, and the return was filed here April 21, 1892. Two full terms had intervened before the hearing, and no motion to dismiss was made. The objection comes too late. The judgment affected is that appearing in the return.

The judgment is reversed, and a new trial awarded.

The other Justices concurred.