Filed May 28, 1895.

---

No. 1,609.

THE LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY
COMPANY v. MALCOM.

RAILROAD.—*Evidence, Customary Manner of Operating Gravel Train.*—*When May Be Shown.—Injured Employe.*—*Negligence.*—In an action by an employe on a gravel train, against the railroad company, for damages sustained while in the performance of his duty, by a sudden stoppage of the train while running at a dangerous rate of speed, it was error to refuse to allow the engineer of the gravel train to answer a question properly put, as to the manner of handling the gravel train from the time he first commenced with it, in April, down to and including the 5th day of May of the same year, the day of the accident, as tending to show whether or not plaintiff assumed the risk

of the danger which caused his injury, he having been employed on such train for some time previous to the accident.

From the Elkhart Circuit Court.

*F. E. Baker, C. W. Miller, G. C. Greene* and *O. G. Getzen-Danner*, for appellant.

*J. D. Osborne* and *A. S. Zook*, for appellee.

· REINHARD, C. J.—The appellee sued the appellant for damages on account of a personal injury sustained while in the employment of the appellant on a gravel train and while engaged with other workmen in shoveling gravel from the flat cars to the ground.

The negligence charged is that as the train was moving at an unusual and dangerous rate of speed, it was stopped suddenly without giving the warning required by the rules of the company, whereby appellee fell and was injured; and that while moving along at such dangerous speed "the train was suddenly, carelessly and negligently stopped by the order and action of said conductor and engineer without any sufficient signal or notice being given either by the bell or whistle or otherwise, and in violation of the rules of the defendant and in violation of their duties by the defendant's said agents then having charge and control of the said engine and train and workmen."

It is further alleged that "at the time the train was so stopped the plaintiff was in the act of throwing a shovelful of gravel from the train with his back toward the engine, and by such sudden stopping the plaintiff was violently precipitated and thrown toward the engine, a distance of about ten feet, so that his body was thrown off the car upon which he was standing and over the space between that car and the next in front, and on and against the end of such last mentioned car, by

means of which the plaintiff's side, back and hip were greatly bruised, beaten and injured.''

The appellant suggests that the *gravamen* of the complaint is that the train was running at an unusual and dangerous rate of speed, and was stopped suddenly without giving warning as required by the rules of the company. It is urged that the jury's answer to interrogatories show that the rules of the company did not require any warning signals; that appellee was familiar with this fact, and also with the speed at which the train was operated for months prior to the time of the accident, such speed being at the rate of four miles per hour; that the train was stopped solely by the air brake on the engine at the time complained of; that appellee was standing with his back to the engine and within three or four feet of the end of the car; that he had been warned by his foreman about being too careless about the tracks and on the trains, and had been told not to stand so close to the end of the car while the train was in motion.

Granting that the answers to interrogatories are as claimed by appellant's counsel, it does not follow that appellant was entitled to judgment upon them. They are not inconsistent with the finding necessarily involved in the general verdict, *viz.*, that the train was suddenly and negligently stopped by the conductor and engineer without any notice or signal, causing the appellee to lose his balance and fall to the ground. Indeed such is the finding in answer to one of the interrogatories. Neither does the fact that appellee was familiar with the speed at which the train was usually operated exempt the appellant from liability. The negligence for which the jury must have concluded the appellant was liable was in the sudden stopping of the train without notice. It is not found that this was the appellant's customary way of

stopping such trains, and the point that appellee assumed the risk is not well taken.

We fully approve of the rule laid down in *Ames, Admr.,* v. *Lake Shore, etc., R. W. Co.,* 135 Ind. 363, and other cases, that when an employe is injured by defective appliances of which he had previous knowledge or had equal opportunities with the employer to know of such defects, he assumes the risks incident to the employment if he continue therein, and can not recover for injuries resulting therefrom. This rule is founded on reason and justice, for if a servant know or have good reason to believe that the master will not do his duty he ought not be heard to say that he had a right to assume that the master would exercise proper care in the matter. But the doctrine is not applicable to the case at bar, for there is no finding that the appellant's train was habitually stopped in the sudden and negligent manner in which the jury found it was stopped on the occasion of the injury, or that this had occurred on any previous occasions.

It may well be doubted whether there could be any liability in a case like this, where the alleged negligence was attributable solely to the want of proper care by a servant toward a fellow servant, but it is claimed that this case is governed by the act of March 4, 1893, making the master liable in such cases. R. S. 1894, section 7083, *et seq.* In view of the conclusion reached we need not decide whether the appellant is liable under the statute.

On the trial the appellant offered to prove by one Alfred Harris, the engineer on the gravel train when appellee was injured, and who had been so employed on said train for some time before, that on the day of such injury the train was being unloaded just the same as gravel trains had been unloaded for years before, and that the

train was handled and operated on the day of appellee's injury the same as on other days from some time in April down to the 5th day of May, the date of the said injury.    Upon objection by appellee's counsel the court excluded the testimony and the appellant excepted.

If the train was operated and the gravel was unloaded at the time of the injury precisely in the same manner in which it had previously been done, the appellee, who was shown to have been running on this train for some time previously, must have been aware of the dangers incident to such service, if dangers there were.    Hence, if the appellant asked the witness proper questions relative to such previous operations and unloading of the train it was error to permit the witness to answer them.    The questions asked of the witness were: "What was the difference between handling this gravel train that day and on the other gravel train?" and "Will you please tell the jury the manner of handling that gravel train from the time you first commenced with it in April down to and including the 5th day of May, 1893?"

It is insisted by appellee's counsel that these questions required the witness to institute a comparison between the manner of operating the train on the occasion of the injury and the manner in which it was previously operated.    If this objection is a valid one to the first question, however, it certainly does not apply to the second. It does not call for a comparison, but seeks to show the manner of operating the train down to the time the appellee was injured.    We think the appellant had a right to show this.

If the manner in which the train was operated was the same for some time previous to the injury, the appellee, who was on the train as an employe, must have known of the risks incident to the employment, and if he knew this, and continued in the service, he can not recover

for any injury resulting from such employment. If, for instance, the jury had found, in answer to interrogatories, that the train was always stopped in the sudden manner in which it was on this occasion, that it was run at the same rate of speed, that no signals were ever given when it was stopped, etc., and that the appellee knew this by reason of his continued previous employment, it would not be contended, we believe, that the appellee had not assumed the risk. Had the appellant's witness been allowed to testify upon the subject, it may be that the jury would have found, from his evidence, that appellee had assumed the risk. At all events, we think the appellant had the right to have such evidence considered.

Other questions presented need not arise again, and hence we will not now decide them.

Judgment reversed, with directions to grant a new trial.

