### RYAN *v.* TOWAR.[1]

1. INVITATION OR LICENSE—ACQUIESCENCE IN USE OF PREMISES.
   An invitation or a license to cross the premises of another cannot be predicated on the mere fact that no steps have been taken to interfere with such practice.[2]

2. SAME—INFANTS.
   There is no difference between children and adults as to the circumstances that will warrant the inference of an invitation or a license to enter upon another's premises.

3. NEGLIGENCE—LIABILITY TO TRESPASSERS.
   The owner of land is not liable to trespassers thereon for injuries sustained by them not due to his wanton or willful acts.

4. SAME—INFANTS—ATTRACTIVE MACHINERY.
   No exception to this rule exists in favor of children who are injured by dangerous machinery naturally calculated to attract them to the premises.[3] Disapproving the doctrine of the *Turntable Cases.*

5. SAME—RESCUING TRESPASSER.
   Nor can an exception be raised in favor of one who enters the premises for the purpose of rescuing a trespasser from danger.

| | |
|---|---|
| 128 | 463 |
| s87NW | 644 |
| s92ASR | 481 |
| f131 | 2573 |
| 128 | 463 |
| 138 | 1257 |
| 128 | 463 |
| f141 | 4 77 |
| 128 | 463 |
| f144 | 3556 |
| 128 | 463 |
| d148 3 | 33 |
| d148 3 | 36 |
| 148 | 38 |
| 148 | 39 |
| j148 | 40 |
| j148 3 | 42 |
| j148 3 | 46 |
| j148 | 48 |
| j148 3 | 49 |
| j148 | 50 |
| j148 | 51 |
| j148 | 52 |
| j148 3 | 53 |
| j148 | 59 |
| j148 | 62 |
| j148 | 63 |
| j148 | 65 |
| j148 | 66 |
| j148 | 67 |
| 128 | 463 |
| d146 | 3247 |
| j146 | 3251 |
| 146 | 3572 |
| 128 | 463 |
| 150 | 1 48 |

---

[1] Rehearing denied October 18, 1902.

[2] On this point see *Formall* v. *Standard Oil Co.,* 127 Mich. 496 (86 N. W. 946).

[3] Several late cases in line with the decis'on in the case at bar are referred to editorially in 6 Law Notes, p. 13.

6. SAME.

Defendant corporation owned an unused pump-house, containing a small overshot water-wheel. Plaintiff, a girl 13 years of age, with other children, was in the habit of crossing the land on which the building was located, without objection on the part of the company, though the premises were inclosed by fences. A younger sister of plaintiff, while playing on the water-wheel with other children, got caught between the wheel and the wheel-pit, and plaintiff was injured in rescuing her. *Held*, that the children were trespassers, and that defendant was not liable for the injury.

MONTGOMERY, C. J., and MOORE, J., dissenting.

Error to Marquette; Stone, J. Submitted April 3, 1901. Decided October 22, 1901.

Case by Mary Ryan, by next friend, against Edgar H. Towar, impleaded with the Bice Manufacturing Company and John M. Longyear, for personal injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

*T. J. Dundon* (*E. J. Mapes* and *J. L. Heffernan*, of counsel), for appellant.

*Clark & Pearl*, for appellee.

HOOKER, J. The Bice Manufacturing Company is an existing corporation, which formerly carried on a manufacturing business at Marquette. Its plant has been shut down for some years. Among other structures, it owned a small pump-house, located upon ground owned by a railroad company, under an arrangement between them. In the house was a small overshot water-wheel. The plaintiff, a girl between 12 and 13 years of age, was in the habit of passing this pump-house on the way to school, with her brothers and sisters; going across lots through the field, because it was nearer. For some time previous to the time of the accident through which plaintiff received her injury, a hole existed in the stone wall of the house

inclosing the wheel, through which children went to play on the wheel. What evidence there is on the subject justifies the inference that it was made by children, and from time to time enlarged, by tearing out the stone of which the wall was built, for the purpose of entry to the wheel. On the day in question, the brothers of plaintiff, on their way from school, crawled through this hole, and, mounting the wheel, were able by their weight to turn the wheel part way round and back. A younger sister, aged 8 years, got caught between the wheel and the wheel-pit. The plaintiff heard her screams, and went through the hole to her succor, and aided in rescuing her, and was herself injured. Suit was brought against the corporation and two of its directors, and the negligence alleged was in permitting the wheel to remain there, accessible to children. The court directed a verdict in favor of the directors, and allowed the jury to determine the liability of the corporation, against which they rendered a verdict for $5,000. From a judgment in favor of the directors, the plaintiff has appealed. The only error assigned is the direction to return a verdict in favor of the directors.

The testimony shows that the buildings of the Bice Manufacturing Company were upon land owned by the railroad company, and that such land, together with the railroad, consisting of several tracks, was fenced. The plaintiff was not shown to have been invited upon the premises, but there is testimony from which the jury might reasonably conclude that children were in the habit of crossing the land of the defendant company and the railroad, and that neither company took steps to prevent it, further than to keep up the fences. It is contended that this amounted to an invitation or license, but we think not. Mere toleration of a trespass does not alone constitute a license even, certainly not an invitation. 1 Thomp. Neg. (2d Ed.) § 1050, and note. The pedestrians who insist upon risking their lives by making a footpath of a railroad track, and others who habitually shorten distances by making footpaths across the corners of village

128 MICH.—30

lots, are none the less trespassers because the owners do not choose to resent such intrusion, and be to the expense and trouble of taking effective measures to prevent it. There is no more lawless class than children, and none more annoyingly resent an attempt to prevent their trespasses. The average citizen has learned that the surest way to be overrun by children is to give them to understand that their presence is distasteful. The consequence is that they roam at will over private premises, and, as a rule, this is tolerated so long as no damage is done. The remedy which the law affords for the trifling trespasses of children is inadequate. No one ever thinks of suing them, and to attempt to remove a crowd of boys from private premises by gently laying on of hands, and using no more force than necessary to put them off, would be a roaring farce, with all honors to the juveniles. For a corporation with an empty treasury, and overwhelmed with debt, to be required to be to the expense of preventing children from going across its lots to school, lest it be said that it invited and licensed them to do so, is to our minds an unreasonable proposition. As to this question of license or invitation, there is no difference between children and adults.

In the case of *Sturgis* v. *Railway Co.*, 72 Mich. 619 (40 N. W. 914), Mr. Justice CAMPBELL said:

"It is impracticable to keep off trespassers from an open track, and all who go upon it do so on their own risk of such dangers as are incident directly to such use."

See, also, *O'Neil* v. *Railway Co.*, 101 Mich. 437 (59 N. W. 836).

In *Clark* v. *Railroad Co.*, 113 Mich. 24 (71 N. W. 327, 67 Am. St. Rep. 442), it was contended that a common practice of crossing a railway, of 20 years' duration, established an easement or a license or invitation, which made it incumbent upon the company to keep the premises free from obstructions, such as a semaphore wire along and a few inches above the surface of the ground. It was held that it proved neither, and that those who

crossed were technical trespassers. Numerous authorities were cited, and the question cannot be considered an open one in this State.

It is a general and nearly uniform rule that there is no duty imposed upon the owner of premises to keep them in a suitable condition for those who come there for their own convenience merely, without the invitation of the owner. The origin of the alleged modern doctrine may be said to practically rest upon what are called the "*Turntable Cases*," the first of which was the case of *Railroad Co.* v. *Stout,* 17 Wall. 657. The opinion was written by Mr. Justice Hunt in the year 1873. A child of 6 years of age was hurt while playing with others upon a turntable, by getting its foot caught between the ends of the rails. The turntable was in a remote place, not far from a public highway, on ground belonging to the company. The trial court charged the jury—

"That, to maintain the action, it must appear  *  *  * that it was a dangerous machine,—one which, if unguarded or unlocked, would be likely to cause injury to children;  *  *  * that the jury were to consider whether, situated as it was, as the defendant's property, in a small town, somewhat remote from habitations, there was negligence in not anticipating that injury might occur if it was left unlocked or unguarded; that if they did not have reason to anticipate that children would be likely to resort to it, or that they would be likely to be injured if they did resort to it, then there was no negligence."

The only question in the case was whether the child was a trespasser, and for that reason could not recover. This case practically laid down the rule "that a railroad company might be liable to trespassers for injuries resulting from its failure to construct, locate, manage, and maintain its turntable with that care and attention to prevent accidents which prudent and careful men ordinarily bestow;" and it held that while "the evidence was not strong, and the negligence was slight," the court was "not able to say that there was not evidence sufficient to justify the verdict," and that the charge was sound.

Four cases are cited as precedents for the proposition that a trespasser is entitled to demand from a landowner ordinary care in the use, condition, and maintenance of structures upon his premises. The first was *Lynch* v. *Nurdin*, 1 Adol. & E. (N. S.) 29. In that case it was held that a child who, seeing a horse and cart unfastened in the street, got into the cart and was injured, could maintain an action against the owner. The case seems to have gone off upon the questions of negligence and contributory negligence, and, no question of trespass being discussed, the inference is perhaps a proper one that it was found by the jury that the owner was negligent in leaving his horse loose in the public street, and that the child had shown as much prudence as could be expected of him. Not only was there apparently no consideration of this question, but later English cases are in conflict with that case, if it necessarily involved it. In *Mangan* v. *Atterton*, L. R. 1 Exch. 239, the defendant exposed for sale a machine in *a public place*, which might be set in motion by a passer-by. A boy 4 years old, by direction of his brother, 7 years old, placed his fingers in the machine while another boy was turning the handle which moved it, and his fingers were crushed. Bramwell, J., said the action could not be maintained, and added: "Suppose the machine was of delicate construction, and was injured by the boy; would he not be a trespasser? If so, it is impossible to hold the defendant." In *Hughes* v. *Macfie*, 2 Hurl. & C. 744, a cellar grating was left standing against a wall in a street. A child playing with it was injured by its falling upon him. The court said that he could not recover, "because he was voluntarily meddling, for no lawful purpose, with that which, if left alone, would not have hurt him. His being of tender years makes no difference." It is noticeable that even the *Lynch Case* did not involve a trespass upon defendant's close, though it did perhaps involve a trespass to personal property.

The next case cited as authority in *Railroad Co.* v. *Stout* is *Birge* v. *Gardiner*, 19 Conn. 507 (50 Am. Dec.

261). There a child was injured by the fall of a gate on the land of the defendant on or near the line of a private alley leading from a public highway back to several dwellings, in one of which the plaintiff lived, and *in which alley it had a right to be.* The court refused to consider the question, and intimated that it made no difference because the plaintiff was not faultless; citing *Lynch* v. *Nurdin.* In *Daley* v. *Railroad Co.,* 26 Conn. 591 (68 Am. Dec. 413), a heavy train of cars coming around a curve killed a child less than 3 years old, playing on the track. The court followed the case of *Birge* v. *Gardiner.* The last case cited was *Bird* v. *Holbrook,* 4 Bing. 628. This was an action brought by a trespasser who was shot by a spring gun set for the purpose, and is clearly not in point. There was a wanton, intentional act, intended to punish trespassing with death, meriting punishment as an attempt at homicide. It is chiefly valuable in this connection as showing the difficulty found in the attempt to support *Railroad Co.* v. *Stout* by precedents.

The enunciation by the highest tribunal in the country of the rule that a landowner owes a duty of care towards a trespasser was sure to be followed by other courts. Among the earliest of these is *Keffe* v. *Railway Co.,* 21 Minn. 207 (18 Am. Rep. 393). This was a turntable case, and the trespassing child 7 years of age. The court there discovers a distinction between a voluntary trespass and one by a person without judgment, who is allured upon premises by his natural inclination, and meddles with things whose uses and dangers he is unable to comprehend. It says, "What an express invitation would be to an adult, the temptation of an attractive plaything is to a child of tender years." Therefore this was an invitation, and the child licensed. Having by this reasoning found the child lawfully on the premises, it proceeds to treat the turntable as a trap, and compares it with a case when one sets traps baited with tainted meat, to allure his neighbors' dogs, which he intends to catch, or sets a spring gun, with the formed design of taking a trespasser's life.

This case was followed by another case in the same court. *O'Malley* v. *Railway Co.*, 43 Minn. 289 (45 N. W. 440). This was also a turntable case, and the child 6 years of age.

In 1881 the supreme court of Nebraska approved the case of *Railroad Co.* v. *Stout*, although it reversed the case before it, and, as was done in the *Stout Case*, recognized the fact that the cases were not harmonious. *Atchison, etc., R. Co.* v. *Bailey*, 11 Neb. 332 (9 N. W. 50).

In Kansas the doctrine was applied in a case of a turntable located in the midst of *an open prairie*, and *a boy 12 years of age*. In discussing the tendencies of boys, the court said :

"Everybody knows that, by nature and by instinct, boys love to ride, and love to move by other means than their own locomotion. They will cling to the hind ends of moving wagons, ride upon swings and swinging gates, slide upon cellar doors and the rails of staircases, pull sleds up hill in order to ride down, etc. * * * Now, everybody, knowing the nature and the instincts common to all boys, must act accordingly. No person has a right to leave, even on his own land, dangerous machinery, calculated to attract and entice boys to it, there to be injured, unless he first take proper steps to guard against *all danger;* and any person who thus does leave dangerous machinery exposed, without first providing against all danger, is guilty of negligence. * * * It is true that the boys in such cases are technically trespassers. But even trespassers have rights which cannot be ignored, as numerous cases which we might cite would show. But see, particularly, the cases of *Railroad Co.* v. *Stout*, 17 Wall. 657; *Keffe* v. *Railway Co.*, 21 Minn. 207 (18 Am. Rep. 393)." *Kansas Central R. Co.* v. *Fitzsimmons*, 22 Kan. 686 (31 Am. Rep. 203).

Here we have the doctrine of the *Turntable Cases* carried to its natural and logical result. We have only to add that every man who leaves a wheelbarrow, or a lawn-mower, or a spade upon his lawn; a rake, with its sharp teeth pointing upward, upon the ground or leaning against a fence; a bed of mortar prepared for use in his

new house; a wagon in his barn-yard, upon which children may climb, and from which they may fall; or who turns in his lot a kicking horse or a cow with calf,—does so at the risk of having the question of his negligence left to a sympathetic jury.    How far does the rule go ?    Must his barn door, and the usual apertures through which the accumulations of the stable are thrown, be kept locked and fastened, lest 12-year-old boys get in and be hurt by the animals, or by climbing into the haymow and falling from beams ?    May a man keep a ladder, or a grindstone, or a scythe, or a plow, or a reaper, without danger of being called upon to reward trespassing children, whose parents owe and may be presumed to perform the duty of restraint ?    Does the new rule go still further, and make it necessary for a man to fence his gravel-pit or quarry ? And, if so, will an ordinary fence do, in view of the known propensity and ability of boys to climb fences?    Can a man nowadays safely own a small lake or fish-pond ? and must he guard ravines and precipices upon his land ? Such is the evolution of the law, less than 30 years after the decision of *Railroad Co.* v. *Stout*, when, with due deference, we think some of the courts left the solid ground of the rule that trespassers cannot recover for injuries received, and due merely to negligence of the persons trespassed upon.    Well might the court of appeals of New York say in *McAlpin* v. *Powell*, 70 N. Y. 126 (26 Am. Rep. 555):

" We are not now called upon to express an opinion as to the soundness of these decisions in such a case, and, while we are not prepared to uphold them, it is enough to say that the facts are by no means analogous."

In addition to the cases discussed, the following recognize the rule laid down in *Railroad Co.* v. *Stout*, attempting to justify their adherence to it in the particular cases by one or another reason, which we think it unnecessary to further allude to: *Nagel* v. *Railway Co.*, (1882) 75 Mo. 653 (42 Am. Rep. 418); *Barrett* v. *Southern Pac. Co.*, 91 Cal. 296 (27 Pac. 666, 25 Am. St. Rep. 186) [this

case cites *Powers* v. *Harlow*, 53 Mich. 507 (19 N. W. 257, 51 Am. Rep. 154), as supporting its doctrine; but in that case the child was not a trespasser on the land, whatever may be said of his meddling with the explosives; of this we will have more to say]; *Harriman* v. *Railway Co.*, 45 Ohio St. 11 (12 N. E. 451, 4 Am. St. Rep. 507); *Westerfield* v. *Levis*, 43 La. Ann. 63 (9 South. 52); *Fort Worth, etc., R. Co.* v. *Robertson*, (Tex. Sup.) 16 S. W. 1093, 14 L. R. A. 781; *Ilwaco R. Co.* v. *Hedrick*, 1 Wash. 446 (25 Pac. 335, 22 Am. St. Rep. 169). It is a significant fact that these are all, with possibly one or two exceptions, railway cases; and it has been suggested by a text writer (2 Wood, Ry. Law, p. 1292), as a reason why railway companies should be held liable in these cases, that they do not hold their property by precisely the same tenure as an individual does, that they are *quasi* public corporations, and that such trespasses are common and frequent upon railroads. But this is a suggestion rather than an authority, and does not purport to be more. Certainly the cases of *Railroad Co.* v. *Stout* and *Birge* v. *Gardiner*, which are the leading cases, do not rest upon or recognize any such distinction or reason.

These two cases, to which can be traced the origin of this doctrine, have not gone unchallenged. In Kansas it was held that the attempt to give a trespasser such a right upon the land of another which could affect the latter in the management of his property would be unconstitutional, as tending to disturb vested rights. *Caulkins* v. *Mathews*, 5 Kan. 191. In *Deane* v. *Clayton*, 7 Taunt. 529, Gibbs, C. J., said:

"I know it is a rule of law that I must occupy my own so as to do no harm to others; but it is their *legal rights only* that I am bound not to disturb. Subject to this qualification, I may occupy or use my own as I please. It is *the rights* of others, and not *their security against the consequences of* [*their*] *wrongs, that I am bound to regard.*"

A fine discussion of this subject will be found in the opinion of Hall, J., in the case of *Keffe* v. *Railway Co.*,

2 Cent. Law J. 172, where numerous authorities are cited.

The doctrine of the cases under discussion was denied in a terse opinion in the case of *Lake Shore, etc., R. Co.* v. *Clark,* 41 Ill. App. 343. It was said:

"The youth of the deceased might be a matter for consideration upon the question of whether he was negligent, but it adds nothing to the duty of the appellant. It is not under greater obligation to anticipate the presence of children upon its tracks than of adults;" citing *Chicago, etc., R. Co.* v. *Roath,* 35 Ill. App. 349.

The case of *Frost* v. *Eastern Railroad,* 64 N. H. 220 (9 Atl. 790, 10 Am. St. Rep. 396), lays down the general rule thus:

"At the time of his injury, the plaintiff was using the defendant's premises as a play-ground, without right. The turntable was required in operating the defendant's railroad. · It was located on its own land, so far removed from the highway as not to interfere with the convenience and safety of the public travel, and it was not a trap set for the purpose of injuring trespassers. *Aldrich* v. *Wright,* 53 N. H. 404 (16 Am. Rep. 339). Under these circumstances, the defendant owed no duty to the plaintiff, and there can be no negligence or breach of duty where there is no act or service which the party is bound to perform or fulfill. A landowner is not required to take active measures to insure the safety of intruders, nor is he liable for an injury resulting from the lawful use of his premises to one entering upon them without right. A trespasser ordinarily assumes all risk of danger from the condition of the premises, and, to recover for an injury happening to him, he must show that it was wantonly inflicted, or that the owner or occupant, being present and acting, might have prevented the injury by the exercise of reasonable care after discovering the danger. *Clark* v. *City of Manchester,* 62 · N. H. 577; *State* v. *Railroad,* 52 N. H. 528; *Sweeny* v. *Railroad Co.,* 10 Allen, 368 (87 Am. Dec. 644); *Morrissey* v. *Railroad Co.,* 126 Mass. 377 (30 Am. Rep. 686); *Severy* v. *Nickerson,* 120 Mass. 306 (21 Am. Rep. 514); *Morgan* v. *City of Hallowell,* 57 Me. 375; *Pierce* v. *Whitcomb,* 48 Vt. 127 (21 Am. Rep. 120); *McAlpin* v. *Powell,* 70 N. Y. 126 (26 Am. Rep. 555); *St. Louis, etc., R. Co.* v. *Bell,* 81 Ill. 76 (25 Am. Rep. 269); *Gavin* v. *City of Chicago,* 97 Ill. 66

(37 Am. Rep. 99); *Wood* v. *School District*, 44 Iowa, 27; *Gramlich* v. *Wurst*, 86 Pa. St. 74 (27 Am. Rep. 684); *Cauley* v. *Railway Co.*, 95 Pa. St. 398 (40 Am. Rep. 664); *Gillespie* v. *McGowan*, 100 Pa. St. 144 (45 Am. Rep. 365); *Mangan* v. *Atterton*, L. R. 1 Exch. 239. The maxim that a man must use his property so as not to incommode his neighbor only applies to neighbors who do not interfere with it or enter upon it. *Knight* v. *Abert*, 6 Pa. St. 472 (47 Am. Dec. 478). To hold the owner liable for consequential damages happening to trespassers from the lawful and beneficial use of his own land would be an unreasonable restriction of his enjoyment of it."

The following is the criticism indulged in of the case of *Railroad Co.* v. *Stout:*

"We are not prepared to adopt the doctrine of *Railroad Co.* v. *Stout*, 17 Wall. 657, and cases following it, —that the owner of machinery or other property attractive to children is liable for injuries happening to children wrongfully interfering with it on his own premises. The owner is not an insurer of the safety of infant trespassers. One having in his possession agricultural or mechanical tools is not responsible for injuries caused to trespassers by careless handling; nor is the owner of a fruit tree bound to cut it down or inclose it, or to exercise care in securing the staple and lock with which his ladder is fastened, for the protection of trespassing boys who may be attracted by the fruit. Neither is the owner or occupant of premises upon which there is a natural or artificial pond, or a blueberry pasture, legally required to exercise care in securing his gates and bars to guard against accidents to straying and trespassing children. The owner is under no duty to a mere trespasser to keep his premises safe; and the fact that the trespasser is an infant cannot have the effect to raise a duty where none otherwise exists. 'The supposed duty has regard to the public at large, and cannot well exist as to one portion of the public, and not to another, under the same circumstances. In this respect children, women, and men are upon the same footing. In cases where certain duties exist, infants may require greater care than adults, or a different kind of care; but precautionary measures having for their object the protection of the public must, as a rule, have reference to all classes alike.' *Nolan* v. *Railroad Co.*, 53 Conn. 461 (4 Atl. 106)."

The Massachusetts court has been no less emphatic in its condemnation of the case of *Railroad Co.* v. *Stout.* In *Daniels* v. *Railroad Co.*, 154 Mass. 349 (28 N. E. 283, 13 L. R. A. 248, 26 Am. St. Rep. 253), a turntable accident was involved; also a child of 10 years. The roadbed was a common thoroughfare. The court discusses all the early cases favorable to plaintiff's contention, and says that, with the one exception of *Daley* v. *Railroad Co.*, 26 Conn. 591 (68 Am. Dec. 413), "all come within other rules, or within well-defined exceptions to the general rule that a landowner owes no duty to a trespasser, *except that he must not wantonly or intentionally injure him or expose him to injury.*" It cites with approval *McAlpin* v. *Powell, supra,* and the New Hampshire case of *Frost* v. *Eastern Railroad;* and to the general proposition which it asserts, viz., that, subject to some exceptions, an owner of land may use it as he sees fit, and, if a trespasser or *mere licensee* is injured, he cannot complain that, if the owner had used it in a more careful manner, no injury would have resulted, it calls attention to the following cases: *Hounsell* v. *Smyth,* 7 C. B. (N. S.) 731, and cases cited; *Clark* v. *City of Manchester*, 62 N. H. 577; *Klix* v. *Nieman,* 68 Wis. 271 (32 N. W. 223, 60 Am. Rep. 854); *Gramlich* v. *Wurst,* 86 Pa. St. 74 (27 Am. Rep. 684); *Cauley* v. *Railway Co.*, 95 Pa. St. 398 (40 Am. Rep. 664); *Gillespie* v. *McGowan,* 100 Pa. St. 144 (45 Am. Rep. 365); *Hargreaves* v. *Deacon,* 25 Mich. 1. Also *Sweeny* v. *Railroad Co.*, 10 Allen, 368 (87 Am. Dec. 644); *Metcalfe* v. *Steamship Co.*, 147 Mass. 66 (16 N. E. 701), and cases cited; *Barstow* v. *Railroad Co.*, 143 Mass. 535 (10 N. E. 255); *Johnson* v. *Railroad,* 125 Mass. 75; *Wright* v. *Railroad,* 129 Mass. 440; *Morrissey* v. *Railroad Co.*, 126 Mass. 377 (30 Am. Rep. 686); *Wright* v. *Railroad Co.*, 142 Mass. 296 (7 N. E. 866); *McEachern* v. *Railroad Co.*, 150 Mass. 515 (23 N. E. 231); *McCarty* v. *Railroad Co.*, 154 Mass. 17 (27 N. E. 773). Most of the cases last cited involved injuries to young children.

The case of *Walsh* v. *Railroad Co.*, 145 N. Y. 301 (39 N. E. 1068, 27 L. R. A. 724, 45 Am. St. Rep. 615), in an opinion by Peckham, J., unqualifiedly condemns the rule of *Railroad Co.* v. *Stout*. This also was a turntable case, and the child was 5 years old. It not only shows the inaccuracy of the rule there asserted, but questions some of the reasons set up by the various courts for following *Railroad Co.* v. *Stout*, and shows the misapplication of authorities relied upon to support the doctrine that landowners must guard trespassers with reasonable care and diligence. It is unnecessary to quote from it, for it can as well be read. See, also, *Charlebois* v. *Railroad Co.*, 91 Mich. 59 (51 N. W. 812); *Hargreaves* v. *Deacon*, 25 Mich. 1; *Moran* v. *Car Co.*, 134 Mo. 641 (36 S. W. 659, 33 L. R. A. 755); s. c. 56 Am. St. Rep. 543, and note; *Dobbins* v. *Railway Co.*, 91 Tex. 60 (41 S. W. 62, 38 L. R. A. 573, 66 Am. St. Rep. 856).

In addition, there are many cases that disregard the rule. Thus it has been held that cars are not dangerous machines, attractive to children, within the rule of the *Turntable Cases*, and that a railroad company owes no duty to a child trespassing in its yard, to see that he does not jump on its cars, or to fence its yard (*Barney* v. *Railroad Co.*, 126 Mo. 372 [28 S. W. 1069, 26 L. R. A. 847]; *Rushenberg* v. *Railway Co.*, 109 Mo. 112 [19 S. W. 216]; *Catlett* v. *Railway Co.*, 57 Ark. 461 [21 S. W. 1062, 38 Am. St. Rep. 254]; *Louisville, etc., R. Co.* v. *Hurt*, [Ky.] 13 S. W. 275; *Chicago, etc., R. Co.* v. *Stumps*, 69 Ill. 409); nor to keep its cars in good repair, or the doors shut (*McEachern* v. *Railroad Co.*, 150 Mass. 515 [23 N. E. 231]; *Curley* v. *Railway Co.*, 98 Mo. 13 [10 S. W. 593]); nor to guard them so that such a child cannot be injured by loosening the brakes (*Central Branch, etc., R. Co.* v. *Henigh*, 23 Kan. 347 [33 Am. Rep. 167]; *Haesley* v. *Railroad Co.*, 46 Minn. 233 [48 N. W. 1023, 24 Am. St. Rep. 220]; *Gay* v. *Railway Co.*, 159 Mass. 238 [34 N. E. 186, 21 L. R. A. 448, 38 Am. St. Rep. 415]; *Jakoboski* v. *Railroad Co.*, 106

Mich. 440 [64 N. W. 461]; *O'Connor* v. *Railroad Co.*, 44 La. Ann. 339 [10 South. 678]); nor in leaving a hand car near the track (*Robinson* v. *Railway Co.*, 7 Utah, 493 [27 Pac. 689, 13 L. R. A. 765]); nor to keep a lookout for trespassing children (*Morrissey* v. *Railroad Co.*, 126 Mass. 377 [30 Am. Rep. 686]; *Wright* v. *Railroad Co.*, 142 Mass. 296 [7 N. E. 866]; *Cleveland, etc., R. Co.* v. *Adair*, 12 Ind. App. 569 [39 N. E. 672, 40 N. E. 822]; *Woodruff* v. *Railroad Co.*, 47 Fed. 689; *Chrystal* v. *Railroad Co.*, 105 N. Y. 164 [11 N. E. 380]; *Masser* v. *Railway Co.*, 68 Iowa, 602 [27 N. W. 776]; *Central R. Co.* v. *Rylee*, 87 Ga. 491 [13 S. E. 584, 13 L. R. A. 634]; *Mitchell* v. *Railroad Co.*, 132 Pa. St. 226 [19 Atl. 28]; *McMullen* v. *Railroad Co.*, 132 Pa. St. 107 [19 Atl. 27, 19 Am. St. Rep. 591]; *McDermott* v. *Railroad Co.*, 93 Ky. 408 [20 S. W. 380]; *Louisville, etc., R. Co.* v. *Williams*, 69 Miss. 631 [12 South. 957]; *Williams* v. *Railroad Co.*, 96 Mo. 275 [9 S. W. 573]).

It remains to discuss our own cases cited in support of plaintiff's contention. The case of *Powers* v. *Harlow*, 53 Mich. 507 (19 N. W. 257, 51 Am. Rep. 154), was a case where a young person exploded a dynamite cap which he found on defendant's premises, under a shed. In discussing the case the court alluded to *Hargreaves* v. *Deacon*, 25 Mich. 1, where it was unqualifiedly held that "owners of private property are not responsible for injuries caused by leaving a dangerous place thereon, but not immediately adjoining the highway, unguarded, where the person injured was not on the premises by permission, or on business or other lawful occasion, and had no right to be there," and said: "The children, it is said, were trespassers; and, even if it can be said that they were licensed to go where they did, the result must be the same," etc. "This is the point on which the case must turn." The court then proceeded to show that the children were rightfully there by invitation, and that some caution was required in such a case. Clearly, this does not adopt the rule of *Railroad Co.* v. *Stout.* In the case of *Baker* v.

*Railroad Co.*, 68 Mich. 90 (35 N. W. 836), the boy was hurt on a public highway crossing by a train. There was no claim that he was a trespasser, or that he was not rightfully there. *McCahill* v. *Railway Co.*, 96 Mich. 156 (55 N. W. 668), was a street-car case, where a trespassing boy was driven from a car in motion, and it was clearly a wanton act.

That a landowner is under no obligation to use care to protect a trespasser is a broad, and, until recently, undisputed, rule, without exception; liability for injuries sustained by such being limited to cases of intentional or wanton injuries. The rule, with this limitation, is sustained today by the great weight of authority. It is contended by some law writers, and has been held in some cases, that an exception exists in favor of children of tender years. The varying reasons given should lead us to doubt the solidity of the foundations upon which these cases rest, especially when none of the reasons are of recognized authority. The law has never before denied the liability of children for trespass because of tender years. On the contrary, it was intimated in *Mangan* v. *Atterton*, L. R. 1 Exch. 239, that a 4-year-old boy was a trespasser, under the circumstances of that case; and there are numerous cases cited in this opinion where liability is denied upon that, and no other, ground. The assertion that the weight of authority supports the plaintiff's contention in this case seems to us incorrect. It may be true that, in cases involving turntables, a majority of the cases, which are necessarily few, have followed the case of *Railroad Co.* v. *Stout, supra;* but there should be a legal principle underlying the rule laid down in that case, and that principle has been assiduously sought for by some of the courts, without success, as we have seen. Others have asserted different reasons for following it. One gives us to understand that a child is licensed to go wherever he can find that which attracts him; a Texas court has held that children of tender years cannot be trespassers; while other authorities are content to rest their approbation of

and adherence to the alleged rule upon the inhumanity of the doctrine that a landowner must not be held responsible for injuries suffered by trespassing children, when by ordinary thoughtfulness and care he could have anticipated and prevented it, and the generic term "attractive nuisances" is applied to the great variety of things which may naturally be expected to allure young children upon private premises. The term "attractive nuisance," as applied, is a new one in the books, and the plausible application of the well-known principle that one must so occupy his own as not to do harm to the rights of others should not be construed to so restrict the use of private lands as to make it necessary to guard and protect trespassers. A man's home has always been considered his castle,—a domain where, secure from intrusion, he might lawfully do as he would, so long as he did not interfere with the *legal rights* of others. It has been his duty to guard those licensed to enter, but beyond that he has not been required to go. In our anxiety to prevent personal injuries, we should not go so far as to overturn private rights.

Admittedly, the duty of incessant watchfulness and care of one's own premises is limited to young children. It does not extend to an adult. Why should it extend to children, upon whose parents both nature and the law impose the duty of care and watchfulness? When, by reason of a parental neglect of duty, a trespassing child is injured, it might be treated as a casualty, or the neglectful guardian might be liable; but there is much reason, if not wisdom, in the common-law rule that the person trespassed upon should not be liable to respond in damages, instead of, as in other cases, having a right of action against the trespasser. But, however Draconic the common-law rule may be considered, it is the province of the courts to enforce it until changed by the legislature. No one questions the power or the propriety of the regulation of the use of railway turntables and other appliances of a dangerous nature. The legislature can do this, and leave un-

touched the common rights of the ordinary landed proprietor. The courts cannot. The rule laid down in *Railroad Co.* v. *Stout* must be a general one, applicable to every one; and, aside from the impropriety of judicial legislation, a wise public policy should forbid such a sweeping innovation by judicial main strength.

In innumerable cases the courts have applied and continue to apply the general rule that a landowner need not protect a trespasser, every case being an assertion of the principle which is disregarded in the cases relied upon by the plaintiff. We have cited a few of them,—enough, we think, to show that the great weight of authority does not sustain the principle of the *Turntable Cases.* While some of the courts have followed the rule of *Railroad Co.* v. *Stout,* both the courts and profession have evinced a tendency to allow this innovation to go no further, and refuse to consider it applicable to other cases every way analogous. They speak of the cases generically, as the " *Turntable Cases,*" and treat such cases as exceptional. We are of the opinion that they are exceptional, and that they are not based upon principle, but contravene one of the old and well-established rules of the law; and we therefore decline to recognize them as authority, preferring to adhere to the better doctrine of the other cases cited. The defendant owed no duty to these children, who were trespassers.

Counsel invoke a further rule, or alleged rule, viz., that the plaintiff went into a place of danger lawfully to rescue her sister, and therefore was rightfully there and entitled to protection. The defendant had a right to rely upon his right to privacy, and to believe that his premises would only be invaded by those whom he should choose to invite and warn against the dangers of the place. Was he, then, bound to suppose that somebody might trespass, and to have some one on hand to warn and protect some possible rescuer of an imaginary trespasser? We think not.

The question discussed disposes of the case, and other points need not be alluded to.

The judgment is affirmed.

LONG and GRANT, JJ., concurred with HOOKER, J.

MONTGOMERY, C. J. (*dissenting*). There is a limitation upon the right which a man has to do what he will with his own. I think a very proper statement of that limitation is that he shall not so use his own property as to be likely to work injury to another. My Brother HOOKER seems to be of the opinion that, even though the use made of property by its owner is likely to result in injury to young children, by attracting them to a dangerous use of the property, yet, if the property be located wholly upon one's own land, so that the child must become a trespasser, in the technical sense, before he can receive injury from the property, the owner may leave it exposed, and will not be liable.

In *Powers* v. *Harlow*, 53 Mich. 507 (19 N. W. 257, 51 Am. Rep. 154), it was said by Mr. Justice COOLEY that:

"Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution towards them must calculate upon this, and take precautions accordingly. If they leave exposed to the observation of children anything which would be tempting to them, and which they, in their immature judgment, might naturally suppose they were at liberty to handle or play with, they should expect that liberty to be taken;" citing *Railroad Co.* v. *Stout*, 17 Wall. 657, and other cases.

This case has been since cited by this court as an authority that where injury results from leaving a dangerous substance exposed, or leaving a pitfall for others, or leaving dangerous machinery in a position where children, acting upon childish instincts, have attempted its use to their injury, the owner is liable. See *Keating* v. *Railroad Co.*, 97 Mich. 154 (56 N. W. 346, 37 Am. St. Rep. 328).

It is true that neither in *Powers* v. *Harlow* nor *Keating* v. *Railroad Co.* were the facts analogous to those in the present case, and for this reason the cases may be distinguished. I refer to them as showing the expressions of the court upon this subject. Indeed, we are not left in doubt as to what was intended by the opinion in *Powers* v. *Harlow*. Judge COOLEY, in his work on Torts (2d Ed., p. 356, *303), under the head of "Implied Licenses," says:

"In the case of young children and other persons not fully *sui juris*, an implied license might sometimes arise when it would not in behalf of others. Thus, leaving a tempting thing for children to play with exposed, where they would be likely to gather for that purpose, may be equivalent to an invitation to them to make use of it; and perhaps if one were to throw away upon his premises, near the common way, things tempting to children, the same implication should arise."

Similar expressions have been indulged in by other eminent writers. In Bish. Noncont. Law, § 854, it is stated:

"A child too young to be controlled by reason, therefore not improperly led by its instincts, receives from the law the protection which its special nature requires. For example, a man who leaves on his own ground, open to the highway, or upon or beside any public place, a dangerous machine, likely to attract children, will be liable to one injured by playing with it, if he neglected precautions against such an accident. On this principle, railroads are held responsible, under proper circumstances, for injuries to young children playing with their turntables."

In 1 Thomp. Neg. (1st Ed.) p. 305, it is said:

"It would be a barbarous rule of law that would make the owner of land liable for setting a trap thereon, baited with stinking meat, so that his neighbor's dog, attracted by his natural instincts, might run into it and be killed, and which would exempt him from liability for the consequences of leaving exposed and unguarded on his land a dangerous machine, so that his neighbor's child, attracted to it and tempted to intermeddle with it by instincts

equally strong, might thereby be killed or maimed for life. Such is not the law."

See, also, Whart. Neg. § 860.

It becomes of some interest to inquire to what extent this doctrine has been adopted by the courts. The case of *Railroad Co.* v. *Stout*, 17 Wall. 657, appears to be a well-considered case; and it was held that where a railroad company left a turntable exposed and unlocked, even some distance from inhabited dwellings, if the turntable was found to be a dangerous machine, and the employés of defendant had reason to believe that children would probably resort to it, an injured child might recover for injuries received in an attempt to use such turntable. The court cite the case of *Lynch* v. *Nurdin*, 1 Adol. & E. (N. S.) 29; Mr. Justice Hunt stating that in the latter case the child was clearly a trespasser in climbing upon the cart. The court also cite *Birge* v. *Gardiner*, 19 Conn. 507 (50 Am. Dec. 261), and *Daley* v. *Railroad Co.*, 26 Conn. 591 (68 Am. Dec. 413). This case was followed by the supreme court of Minnesota in *Keffe* v. *Railway Co.*, 21 Minn. 207 (18 Am. Rep. 393), and also in *O'Malley* v. *Railway Co.*, 43 Minn. 289 (45 N. W. 440). It was cited and approved by the supreme court of Ohio in *Harriman* v. *Railway Co.*, 45 Ohio St. 11 (12 N. E. 451, 4 Am. St. Rep. 507). It was cited and followed by the supreme court of California in *Barrett* v. *Southern Pac. Co.*, 91 Cal. 296 (27 Pac. 666, 25 Am. St. Rep. 186). It was followed by the supreme court of Missouri in *Nagel* v. *Railway Co.*, 75 Mo. 653 (42 Am. Rep. 418). See, also, *Schmidt* v. *Distilling Co.*, 90 Mo. 293 (1 S. W. 865, 2 S. W. 417, 59 Am. Rep. 16). Its authority was recognized by the supreme court of Kansas in *City of Osage City* v. *Larkin*, 40 Kan. 206 (19 Pac. 658, 2 L. R. A. 56, 10 Am. St. Rep. 186), and it was followed in *Kansas Central R. Co.* v. *Fitzsimmons*, 22 Kan. 686 (31 Am. Rep. 203). The doctrine was approved by the supreme court of Nebraska in *Atchison, etc., R. Co.* v. *Bailey*, 11 Neb. 332 (9 N. W. 50); by the supreme court

of Texas in *Evansich* v. *Railway Co.*, 57 Tex. 123 (44 Am. Rep. 586). The doctrine was applied in *Whirley* v. *Whiteman*, 1 Head, 610; *Ilwaco R. Co.* v. *Hedrick*, 1 Wash. 446 (25 Pac. 335, 22 Am. St. Rep. 169); *Ferguson* v. *Railway*, 77 Ga. 102; *Bridger* v. *Railroad Co.*, 25 S. C. 24; *City of Pekin* v. *McMahon*, 154 Ill. 141 (39 N. E. 484, 27 L. R. A. 206, 45 Am. St. Rep. 114). See, also, *Indianapolis, etc., R. Co.* v. *Pitzer*, 109 Ind. 179 (6 N. E. 310, 10 N. E. 70, 58 Am. Rep. 387). Nor is it only in cases of turntables that this principle is applied. The case of *Hydraulic Works Co.* v. *Orr*, 83 Pa. St. 332, is an instructive case. See, also, *Gramlich* v. *Wurst*, 86 Pa. St. 79 (27 Am. Rep. 684). This subject was again reviewed by the Supreme Court of the United States in *Union Pac. R. Co.* v. *McDonald*, 152 U. S. 262 (14 Sup. Ct. 619); and in an elaborate opinion by Mr. Justice Harlan, concurred in by the entire bench, after a full review of the English and American authorities, the doctrine of *Railroad Co.* v. *Stout* was reaffirmed. On the other hand, the courts of Massachusetts, New Hampshire, New Jersey, and New York have refused to follow the case of *Railroad Co.* v. *Stout* and the current of authority.

It is said that *Lynch* v. *Nurdin*, 1 Adol. & E. (N. S.) 29, has been disapproved by later English cases, and the case of *Mangan* v. *Atterton*, L. R. 1 Exch. 239, is cited. But the latter case has itself been disapproved by Chief Justice Cockburn in *Clark* v. *Chambers*, 3 Q. B. Div. 327, in which case it was said:

"It appears to us that a man who leaves in a public place, along which persons, and, amongst them, children, have to pass, a dangerous machine, which may be fatal to any one who touches it, without any precaution against mischief, is not only guilty of negligence, but of negligence of a very reprehensible character; and not the less so because the imprudent and unauthorized act of another may be necessary to realize the mischief to which the unlawful act or negligence of the defendant has given occasion."

The case cited from 5 Kan. 191 [*Caulkins* v. *Mathews*], as sustaining the view that a trespasser can under no circumstances have a right of action, is certainly overruled by the later Kansas cases cited above, to the extent, at least, that the latter cases hold that where there is the element of enticement of young children, who act upon childish instincts, a recovery may be had by a trespasser.

Reference is had to a discussion of this subject in the opinion of Hall, J., in *Keffe* v. *Railway Co.*, 2 Cent. Law J. 172. It should be stated that this was a discussion in an opinion by the circuit judge, which was not followed by the supreme court of Minnesota, but, on the other hand, the entire bench concurred in the rule laid down in *Railroad Co.* v. *Stout.*

It will be seen that the great weight of authority in this country sustains the rule laid down in *Railroad Co.* v. *Stout.* Its authority has been recognized by our own decisions, although in cases where a ruling upon the precise point was not called for. I do not share the apprehension of my Brother HOOKER that a man would not be safe to leave agricultural implements on his farm if this rule should obtain. Undoubtedly there must be something about the premises to entice a child, and, unless there is something calculated to allure a child of tender years, and to appeal to his childish instincts, no duty of the owner is violated. Nor do I understand that the question of negligence or of no negligence is to be decided by ascertaining whether a farmer may or may not be guilty of the act. You may call the doctrine of these cases the result of evolution of the law, or what you please. It is a humane doctrine, and the principle cannot be better stated than in the extract from Thompson on Negligence above quoted. I do not feel justified in ignoring the overwhelming weight of authority which makes for this rule, as well as the expressions of our own court. I dissent from the views expressed by Mr. Justice HOOKER.

As a majority of the court express the view that no right of action exists as against the corporation, it becomes

unnecessary to inquire whether the directors are responsible.

MOORE, J., concurred with MONTGOMERY, C. J.