SUGAR CREEK CREAMERY COMPANY *v.* EADS.

[No. 12,899. Filed November 1, 1927. Rehearing denied April 20, 1928.]

*Charles M. McCabe* and *Louis B. Ewbank*, for appellant.

*Williams & Murphy*, for appellee.

NICHOLS, J.—Action by appellee to recover damages on account of injuries she sustained when she pulled a small pitcher from a table in the "testing room" at appellant's cream station, in Crawfordsville, Indiana, and spilled sulphuric acid from it upon her neck and chest in trying to drink from the pitcher, under the apparent impression that it contained drinking water.

Appellant answered the complaint in general denial, and the cause was submitted to a jury for trial, which returned a general verdict in favor of appellee for $5,000 damages, together with answers to thirty-four interrogatories. Appellant's motion for a new trial was overruled, and the court rendered judgment on the verdict in favor of appellee for $5,000, from which this appeal.

The only error assigned is the court's action in overruling the motion for a new trial, under which is presented the insufficiency of the evidence to sustain the verdict and error in certain instructions.

The facts as found by the jury in answer to interrogatories submitted to it by the court, stated in narrative

form, are that appellant has a cream station in Crawfordsville for the transaction of its business with a office room fronting on the north margin of Market street, about fourteen feet nine inches wide east and west and eighteen feet six inches long north and south, which was provided with a chair for the use of the employee in charge, scales for weighing cream and some chairs for patrons while waiting to transact business with appellant and was used for receiving patrons and their milk and cream and transacting business with such patrons. Appellant had a testing room used for testing cream at said place of business, which was immediately north of and adjoining its office, with an open doorway between them, which testing room was provided by appellant for the use of its employees for the purpose of testing and handling milk and cream purchased from patrons. Said testing room was partitioned off from the office for the purpose of having it only for use of appellant's employees in testing and handling cream, and it was not at all necessary for patrons of the creamery to enter the testing room in the transaction of their business with appellant. The testing room was equipped with appliances and instrumentalities on a bench along the west wall and a stool or backless chair for use of a tester thereat, a bench along the north wall, extending from the northwest corner of the room seventy-eight inches, and having a width of twenty-three and one-half inches, and numerous glass testing tubes, an electric whirler and a vessel containing sulphuric acid, all necessarily used in making tests of cream and situated on said bench. There were in said testing room a rectangular tank containing water and a gas jet or hot plate for heating water to be used in testing cream and in washing cream and milk cans, all located east of said bench, and a water pipe having a faucet thereto located above said water tank, and used for filling the

water tank with water. There was no other chair than said stool or backless chair in the testing room. Appellant had and used, for convenient use in handling sulphuric acid in making tests of cream from time to time, a small white porcelain pitcher, having a capacity of from one-half pint to a pint, such pitcher resembling a cream pitcher, which usually sat on said north bench in the testing room, and it was customary in Crawfordsville to use a small pitcher for convenient use in handling sulphuric acid for making frequent tests, and the use of said pitcher on and about said north bench in said testing room as a convenient means of using acid for testing cream was the usual and customary method of conducting such work. Said testing room was not in any way held out by appellant or its employees as a place where patrons were entitled or permitted to enter, except on special request made or special permission given. On the day of appellee's injury, her mother obtained from Mrs. Hudson, agent in charge thereof, special permission to enter said testing room to get drinking water for appellee from the water faucet therein, and appellee's mother did take her into said room to get drinking water for appellee from such water faucet and appellee's mother did take her into said room to get drinking water for appellee, but brought her out of said testing room into appellant's office room without getting said drinking water. On returning from said testing room after going to get water for appellee, the mother informed Mrs. Hudson, sole agent in charge, that she had not succeeded in getting the water for appellee, and Mrs. Hudson thereupon said to appellee's mother, in substance, "Wait a minute and I will get the water for her." When she said that, Mrs. Hudson was engaged in writing out cream checks for appellee's mother and other patrons and had been so engaged from the time appellee asked for a drink of water. Very shortly after Mrs. Hudson

had said, "Wait a minute and I will get the water for her," appellee ran back into the testing room and reached up and seized hold of said small white pitcher and drew it toward her. Said pitcher contained some sulphuric acid and had been left on said north bench by appellant's employee after its use in making the last test of cream, shortly before the appellee's injury. Appellee received her injuries from sulphuric acid spilled from said pitcher while she held it in her hands. Immediately upon noticing that appellee had gone unattended by her mother into said testing room, appellant's agent, Mrs. Hudson, rushed to appellee and took the pitcher out of her hands. Mrs. Hudson had charge of the cream station as appellant's agent on that day. Said agent had no reason to believe or anticipate in the exercise of ordinary care that appellee or any child would enter said testing room or be attracted by or take hold of or play or tamper with said pitcher or be in danger therefrom.

The last finding of the jury is but a conclusion of fact that is not sustained either by the specific findings preceding, or by the evidence. While it is averred in the complaint that appellee was an invitee, and that other children were in the habit of going to appellant's office on the invitation of appellant, there is no evidence to sustain these averments. There is no evidence that other children such as appellee were ever in appellant's office, and it appears by the evidence that this was the first time that appellee's mother had ever taken her there. This time she had her mother and three older sisters with her, one of whom was sixteen years of age. She would not have been there had she not have been in charge of someone who took her there. It is well settled that the negligence of a parent cannot be imputed to her children, but the fact that appellee was in appellant's office in charge of her mother, and that three older

sisters were with her may well be taken into consideration in determining whether appellant had reason to anticipate, in the exercise of ordinary care, that she would be permitted to get hold of the pitcher. Appellant's agent had just been using the acid from the pitcher for the purpose of testing the cream of appellee's mother and of others, and we assume would have soon used it again for the next customer. Witness Mrs. Bennett, who had worked in other creameries, and who was called by appellee to testify as to the custom of such creameries, testified that it was the custom, when not testing, to leave the acid in the pitcher till evening and then pour it back into the jug and put in a rubber cork. It thus appears that appellant was conforming to the custom of such plants. There is nothing to suggest to appellant that the mother would bring appellee, her baby, with her to appellant's office, and that while there appellee would escape from her mother, run across the front room or office, a distance of eighteen and one-half feet, then across the test room, a distance of eleven and one-half feet and pour the acid from the pitcher onto herself. We do not challenge the principles of the turn-table cases, which have been so often relied on in holding persons maintaining "attractive nuisances" liable in damages for injuries to children, but we do think that such cases have gone the full limit, and we hold that they are not in point under the circumstances here involved. Suppose there is a coffee pot filled with hot coffee standing on the table—would a child whose visiting mother brings it into the home be entitled to recover damages in case it should pull the pot over and burn itself? Or that there is an ice pick lying on the table by the refrigerator—would such a child be entitled to recover for damages in case it should reach the pick and injure itself with it? Or that in this case there had been machinery in operation in the back room and the child should

have escaped from its mother, run into the machine shop, and put its hand in the cogs of the machinery—would appellant have been liable? We think not. The court in the case of *Ryan* v. *Towar* (1901), 128 Mich. 463, 470, 471, 87 N. E. 644, 55 L. R. A. 310, in discussing the extremes to which the doctrine may be carried, appropriately says: "Every man who leaves a wheelbarrow, or lawnmower, or a spade upon his lawn; a rake with its sharp teeth pointing upward, upon the ground or leaning against a fence; a bed of mortar prepared for use in his new house; a wagon in his barnyard, upon which children may climb and from which they may fall, or who turns in his lot a kicking horse or cow with a calf— does so at the risk of having the question of his negligence left to a sympathetic jury. How far does the rule go? Must his barn door, and the usual apertures through which the accumulations of the stable are thrown, be kept locked and fastened lest twelve-year-old boys get in and be hurt by the animals, or by climbing in the haymow or falling from beams? May a man keep a ladder, or a grindstone, or a scythe, or a plow, or a reaper, without danger of being called upon to reward trespassing children, whose parents owe and may be presumed to perform the duty of restraint? Does the new rule go still further, and make it necessary for a man to fence his gravel pit or quarry? If so, would an ordinary fence do, in view of the known propensity and ability of boys to climb fences? Can a man nowadays safely own a small lake or fish-pond? And must he guard ravines and precipices on his land?"

Having reached the conclusion that, under the facts and circumstances of this case, appellee's injuries were not the result of the negligence of appellant, we deem it unnecessary to discuss the challenged instructions.

Reversed.

Dausman, J., absent.